HENRY A. B. DUNNING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 83459.    Promulgated December 31, 1937.

*Vernon Cook, Esq.*, for the petitioner.
*R. P. Hertzog, Esq.*, for the respondent.

1226

OPINION.

Harron: Respondent contends that all of the income of the five trusts created by petitioner in 1932 is taxable to the petitioner. Respondent has added to petitioner's taxable income for 1933 the amount of $158,610.41 explained as "trust income." This amount is less than the total amount of the income of the five trusts during 1933 but appears to be approximately the total amount of dividends received by the trust and, since the chief stock held was the stock in Hynson, Westcott & Dunning, it appears that respondent's chief contention is that the petitioner is taxable on the income of the trust consisting principally of dividends on the Hynson, Westcott & Dunning stock upon which petitioner would have been taxable but for the transfer of that stock to the trusts.

Respondent argues that although the trusts created by petitioner were irrevocable for approximately 4½ years and the stock constituting the corpus of the trust was actually transferred of record to the trust, nevertheless, the petitioner's powers and rights were so substantial that the petitioner did not "divest himself of title to the stock

in any permanent or definitive way" and "did not strip himself of every interest in the subject matter of the trust estate." In making this argument respondent relies upon *Benjamin F. Wollman*, 31 B. T. A. 37, and *William C. Rands*, 34 B. T. A. 1107. In considering this part of respondent's argument, we first note that there are substantial differences in the facts in the *Wollman* and *Rands* cases and in the facts in this proceeding. In the *Wollman* case the petitioner retained title to securities, received income, and retained such interest and powers over the securities that the Board concluded that the securities could properly be regarded as his property and the income taxable to him. In the *Rands* case the beneficiary was not entitled to distribution of any of the gains of the trust above dividends on stock held and it was held that the trusts were without substance. The petitioner here created valid trusts and conveyed Hynson, Westcott & Dunning stock to the trusts of record. We conclude from the facts that he conveyed the stock in question completely to the trusts. The petitioner, it is true, appointed himself as one of the trustees of the trust and the trust instrument gave to petitioner, as trustee alone, powers of management of the assets of the trust including the power to sell, to invest and reinvest property of the trusts, and to vote the H. W. and D. stock. However, the trust instruments clearly provide that $10,000 a year out of the trust income be paid to the grantor's wife and that any income remaining after making such payments shall be held in the trust and reinvested or distributed to named beneficiaries. During the taxable year the petitioner could not in any way receive any of the income of the trust himself and the trusts were carried out so that it is clear that the income of the trusts was used to pay the stipulated amounts to Mrs. Dunning and the surplus income was reinvested in securities which were held in the trust and are still held in the trust. Therefore, we do not agree with the contention of respondent that petitioner should be taxed on the income of the trusts on respondent's first argument. Since it is concluded that petitioner transferred completely the H. W. and D. stock to the trusts, we do not believe that powers of management of the securities in the trust, or the discretionary power with respect to the sale of trust property, reinvestment of proceeds, or the right to vote the H. W. and D. stock held by the trustees constituted any such reservation of power in the petitioner, as an individual, over the economic benefits or enjoyment of the property such that we should disregard the completed transfer of the stock to the trust and tax the petitioner on dividends and income received by the trust. We do not believe that petitioner could be taxed upon the income of a trust only because he made himself a trustee, or one of the trustees, and the powers to supervise the investment of trust property, to sell and reinvest trust

property, to vote stock held by the trust, and to generally manage the trust property are all part of the normal powers of a trustee. Petitioner perhaps had more confidence in his own judgment in these matters than he had in the judgment of the cotrustee, a trust company, and his assignment of these powers to himself as trustee to the exclusion of the other trustee does not appear to be a reasonable ground for sustaining the first contention of the respondent. See *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, 341; *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48, 49.

It is clear that section 166 of the Revenue Act of 1932 is not applicable in determining the issues, for the grantor could not at any time during the taxable year revest in himself title to any part of the corpus or income of the trust, either alone or in conjunction with any other person.

The question remains whether the trusts created come within the provisions of section 167 (a) (1) of the Revenue Act of 1932.[1] The trusts provide that income of the trusts above the amount distributed to beneficiaries each year shall be held in the trust and reinvested. It is respondent's contention that income of the trusts could be accumulated or held for future distribution to the grantor. Consideration of this aspect of the question requires construction of the trust instruments. They provide that the trusts are irrevocable until January 10, 1937, and shall terminate on that date if the grantor elects to give notice that he desires no extension of the trusts. Upon termination of the trust the corpus of the trust but not the accumulated income shall revert to the grantor. It is our construction of the trust deeds that the term "corpus" of the trust refers to the H. W. and D. stock only and not to any securities acquired by investment of the surplus income of the trusts. This construction is supported by the fact that when the trusts were terminated only the H. W. and D. stock was returned to the petitioner and that the trusts are still in existence and still possess the investments made out of surplus income. Had any of the trust property purchased with accumulated income or any of it been distributed to petitioner on

---

[1] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (n), relating to the so-called "charitable contribution" deduction) * * *.

termination of the trust, the trust obviously would come within section 167 (a) (1).

This is a proceeding where an unusual state of facts exists. The issue requires construing provisions of trusts in existence in the taxable year but which were terminated as to the original trust corpus prior to the hearing before this Board on the issues. The steps taken on the partial termination of the trust should not be disregarded. The right to terminate the trusts as to the original corpus has been exercised. That is, the grantor of the trust has reacquired the H. W. and D. stock, but this was not done in the taxable year so as to make section 166 controlling and section 167 refers to income and not principal. Under the provisions of the trust instruments the trusts as to accumulated income and the investments of such·continue for a period of twenty-one years after the death of the last survivor of the wife and four children of the grantor and the property so remaining in the trust does not revert in any respect to the grantor. Under this present continuance of the trust the current income is to be paid one-half to petitioner's wife and one-half in equal parts to the four children. It is our understanding of the trust deeds that petitioner can not, under the trusts, reacquire any of the property now held· by the trusts. The right to reacquire the corpus of the trusts has been exercised and the grantor has reacquired the orginal corpus. He may not acquire what is now the corpus derived from the investment of the accumulated income.

The above construction of the trusts was as evident in 1933 as it is now, although prior to January 10, 1937, there existed some ambiguity in the use of the term "corpus" of the trusts in that it possibly could have meant both the H. W. and D. stock and other securities acquired by investment of surplus income. But this ambiguity has been cleared by the action taken. Further, there is no provision in the trusts stating specifically or indicating that the trustees might accumulate income for distribution to the grantor or distribute income to the grantor. The contention of the respondent rests entirely upon his construction of the terms of the trusts that give to the grantor, as a trustee, the power to invest and reinvest surplus income in his sole discretion taken together with the provision that on termination of the trusts the corpus of the trusts would revert to the grantor. But we do not believe respondent's contention is sound in the light of the facts referred to above and in relation to the lengthy provisions in the trust directing the trustee to distribute income from investments of the accumulated income and to make ultimate distributions of the principal created by reinvesting accumulated income to the beneficiaries only and to the exclusion of the grantor. Cf. *Preston R. Bassett*, 33 B. T. A. 182.

We now pass to the question whether petitioner is taxable for part of the income of the trust in 1933, specifically, the amount of $32,027.28 paid on insurance premiums, the amount of $9,837.50 paid on account of household expenses, the amount of $1,780.25 expended for the benefit of adult children, and $353.04 expended for the benefit of a minor child. All of these expenditures were made by Mrs. Dunning out of the $50,000 income from the trusts received by her and deposited in her own account.

The five trusts all contain the simple provision that out of the first income of each trust $10,000 shall be paid to Ethel Adams Dunning. The trusts do not contain any provision requiring that this income be used by Mrs. Dunning for any purpose or use. The income was the separate income of Mrs. Dunning. However, petitioner has testified that he suggested to Mrs. Dunning that she use part of the total income to pay premiums on the life insurance policies which had been assigned to her. Mrs. Dunning carried out this suggestion.

Regarding this suggested use of income, strictly, we recognize that there was no legal obligation on Mrs. Dunning to so use part of the income and there is no evidence that before the trusts were created Mrs. Dunning agreed with her husband to make such use of part of the income. Nevertheless, petitioner made the suggestion and there is this evidence of an element of control exercised, it is true, outside of any requirement in the trust agreement. Further, section 167 (a) (3) of the Revenue Act of 1932, quoted above (see also section 219 (h), Revenue Act of 1926), specifically taxes the grantor of a trust, where "any part of the income of a trust is * * * applied to the payment of premiums upon policies of insurance on the life of the grantor", upon such part of the income of a trust so used. The intent of Congress in enacting this provision is well understood to have been to prevent avoidance of taxation. The statute makes no restriction that to tax income the income is applied to payment of premiums upon policies of insurance pursuant to the requirements of the trust deed. The language of the statute is plain and we understand it to be broad in its application. We conclude that petitioner is taxable on the amount paid in the taxable year on life insurance premiums, under the provisions of section 167 (a) (3).

Petitioner has argued forcefully that the facts take this proceeding outside the rule set forth in *Burnet* v. *Wells*, 289 U. S. 670, because the trust instruments did not require that any of the income of the trusts be applied to pay life insurance premiums. Petitioner ably argues that to tax him on this part of the income amounts to measuring the income tax of one taxpayer by the income of another

and he contends that if such construction of section 167 (a) (3) is required under the statute, then the provision of the statute so construed is unconstitutional, citing *Hoeper* v. *Tax Commission of Wisconsin*, 284 U. S. 206. However, after giving careful consideration to petitioner's thorough argument, we conclude that the conclusion reached above is in accordance with the express language of the statute. The opinion in *Burnet* v. *Wells*, *supra*, leaves undetermined the validity of such construction, as is indicated by the following excerpt from that opinion, at pages 681 and 682:

Trusts for the preservation of policies of insurance involve a continuing exercise by the settlor of a power to direct the application of the income along predetermined channels. In this they are to be distinguished from trusts where the income of a fund, though payable to wife or kin, may be expended by the beneficiaries without restraint, may be given away or squandered, the founder of the trust doing nothing to impose his will upon the use. There is no occasion at this time to mark the applicable principle for those and other cases. The relation between the parties, the tendency of the transfer to give relief from obligations that are recognized as binding by normal men and women, will be facts to be considered. Cf. *Reinecke* vs. *Smith*, *supra*, distinguishing *Hoeper* vs. *Tax Commission*, 284 U. S. 206. We do not go into their bearing now. * * *

We believe the conclusion reached upon the facts here is correct. Mrs. Dunning had never paid premiums on the policies before the trusts were created. She did so subsequently at the suggestion of the grantor of the trusts. Also, outside of the terms of the trust, the grantor did exercise an element of control over part of the income paid to Mrs. Dunning and the use of the income so as to prevent a forfeiture of the insurance contracts by failure to pay premiums was a benefit to the petitioner. The argument that the trust income of $50,000 was Mrs. Dunning's own property and that she was not legally bound by her husband's suggestion is an argument based upon refinements of legal title which the courts have been willing to look through in recognition of the reality of the solidarity of the family unit. Cf. *Reinecke* v. *Smith*, 289 U. S. 172.

With respect to the amounts used by Mrs. Dunning for household expenditures and for three children, two adult and one minor, the contention of respondent that petitioner is taxable for all of these amounts is based upon the authority of the decision in *Douglas* v. *Willcuts*, 296 U. S. 1. Respondent also relies upon *Helvering* v. *Schweitzer*, 296 U. S. 551; *Commissioner* v. *Grosvenor*, 85 Fed. (2d) 2, and the decision of *Hill* v. *Commissioner*, 88 Fed. (2d) 941, is also authority. In all of the above cases the facts show that the existing trust deeds contained provisions requiring that income of a trust be used for care and maintenance of individuals and that there was

an obligation in the grantor of the trust to provide for such persons. In these cases, the income of the trust having been used to discharge an obligation benefiting the grantor of the trust, it was held that there was income to the grantor and the grantor was taxable. In this proceeding the trust instrument does not contain any provision requiring that any of the income of the trust be used to pay for household expenditures, or to be used for the benefit of any children. Petitioner contends that the income was the income of Mrs. Dunning and that the grantor of the trust should not be taxed on these amounts as he did not retain, through the trust instruments, such control over the use of the income that he should be taxed upon voluntary expenditures made by Mrs. Dunning. Here the argument of petitioner is that to so tax petitioner results in taxing him upon the income of another person.

There are lacking in this case the elements present in the above cited cases that made the income taxable to the creator of the trust. There is no agreement, no trust provision, no court decree requiring the expenditure of the trust income for the purposes for which it was used or for any purpose that would relieve the petitioner of any of his obligations. The facts in this proceeding show that there was no agreement or requirement that Mrs. Dunning expend part of the income she received from the trust for the expenditures in question. Clearly, there was no such requirement in the trust instruments and the evidence does not show any separate agreement between herself and her husband that she would make such expenditures. Rather Mrs. Dunning has testified that she made these expenditures voluntarily and there is no evidence to support the conclusion that Dunning did not make the major contributions to the maintenance of the home and his minor child. Under such facts we believe it is proper to regard the expenditure of Mrs. Dunning for her three children as gifts to them and the expenditures she made for her home as use of her own income for an object which would naturally be of primary interest to her and, if it is necessary to label her expenditures for her home, it is reasonable to call them gifts to her household. We do not understand the rule of *Douglas* v. *Willcuts* to be that under such facts income was received by the petitioner as the result of these voluntary expenditures by Mrs. Dunning. It is, therefore, concluded that petitioner is not taxable for these amounts.

*Decision will be entered under Rule 50.*