ELLSWORTH B. BUCK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 93330.   Promulgated January 18, 1940.

*M. Francis Bravman, Esq.,* for the petitioner.
*Harold F. Noneman, Esq.,* for the respondent.

102

MURDOCK: Although the Commissioner in his notice of deficiency referred to both section 166 and section 167 to justify his inclusion of the trust income in the income of the petitioner, he now, apparently, seeks no support for his action in section 167, except as to a small amount mentioned in his alternative contention. Section 167 provides that where any part of the income of a trust is, or in the discretion of described persons may be, distributed or held for future distribution to the grantor or applied to the payment of premiums upon policies of insurance on the life of the grantor, then that part of the income of the trust shall be included in computing the net income of the grantor. All of the income of the trust was payable in this case to the wife of the grantor or to beneficiaries other than the petitioner. He expressly provided that he should have no power to amend the trust so as to direct that any part of the income of the trust should be distributed to him, held for future distribution to him, or applied to the payment of premiums upon policies of insurance on his life. The terms of the trust denying these powers to the petitioner are equally as broad as the provisions of section 167 and may have been drawn for the very purpose of preventing the income of this trust from being taxable to the petitioner under section 167. We find no justification for taxing the income of the trust to the petitioner under section 167.

The respondent now attempts to justify his determination solely on the following grounds: First, that all of the income of the trust is taxable to the grantor as the income of a revocable trust within the meaning of section 166; second, the trust is without substance and, therefore, the income is taxable to the petitioner as his own income under section 22 (a) ; third, as an alternative, a portion of the trust income paid into an insurance trust was used to pay premiums on policies of insurance on the petitioner's life and is taxable to him under section 167 (a) (3). His first argument is based upon that provision of the trust instrument, quoted in the findings of fact,

wherein the grantor reserved to himself the right to alter or amend the trust provisions relating to the disposition of the income and principal of the trust and to change any beneficial interest under the trust, and upon the other provision whereby any beneficiary was entitled to terminate the trust as to that part of the principal from which he was receiving income, whereupon that principal would go to the grantor. The respondent argues:

> He may thus designate, for the purpose of terminating the trust, a compliant person as the recipient of the income of the entire trust, who will then terminate the trust, whereupon the petitioner will receive that which he theretofore had transferred to the trustee. This the respondent submits gives the petitioner the right to revest title to the entire corpus in himself.

He cites a number of cases in support of this argument, but claims that the one most nearly in point is that of *Ralph Pulitzer*, 36 B. T. A. 964, a division decision now on review in the Second Circuit. Pulitzer created a trust and named his wife as life beneficiary, with remainders to their children. He expressly provided, however, that he could designate some third party who would have the power to revoke the trust in whole or in part, and upon such termination the trustee was to pay the funds, in so far as the trust was terminated, to the one designated. The Board, observing that the power to revest need not be expressly reserved in the instrument, held that the grantor actually had a power to revest because he could contract with a third person to have that third person receive the power of revocation, revoke the trust, receive the property, and transfer it to the grantor. The deed in the present case does not contain provisions corresponding closely to those contained in the Pulitzer deed, although a beneficiary is permitted to revoke as to the corpus from which he receives income. The Pulitzer deed did not contain provisions similar to the following contained in the present deed:

> Provided, however, that the grantor shall have no power to revoke this trust in whole or in part, or to revest in himself title to any part of the principal of the trust estate, and provided further that he shall have no power to amend this indenture so as to direct that any part of the income of the trust be distributed to him or held or accumulated for future distribution to him, or so as to direct that any part of the income of the trust be applied by the trustee to the payment of premiums upon the policies of insurance on his life.

The *Pulitzer* case may be distinguishable or, at least, may not be an authority for another reason. If it be assumed that the petitioner might contract with a "compliant person" so that when he exercised his power to amend and named that person as beneficiary, that person in turn would agree to terminate the trust, nevertheless, he did not enter into any such contract during the taxable years, and, until he found a suitable compliant person to act as his puppet and bound that person by contract, this assumed power in him was potential only, was

contingent, and did not exist. *Corning* v. *Commissioner*, 104 Fed. (2d) 329. Consequently, section 166 would not apply even under the interpretation of the trust deed urged by the Commissioner.

There is a canon of construction that a deed of trust must be interpreted in accordance with the intent of the grantor gathered from the entire trust instrument. The interpretation placed upon this trust instrument by the respondent would give to the grantor indirectly and in conjunction with a puppet, powers which he expressly denied himself in the trust instrument. That interpretation, which would permit him to dry up the trust to his own advantage and to the disadvantage of the beneficiaries, seems strained and unreasonable. Cf. *Knapp* v. *Hoey*, 24 Fed. Supp. 39; affd., 104 Fed. (2d) 99. If he did not bind the puppet by agreement, the person would have an adverse interest. The record does not suggest that this trust, which indicates great care on the part of the petitioner to provide for his wife and their descendants, was set up as a subterfuge. We are unwilling to hold that this petitioner had the intention, which the respondent would attribute to him, of reserving to himself the powers necessary to bring this case within section 166.

The courts and the Board have held in other cases somewhat similar to this one that the income of trusts was not taxable to the grantor. See *Knapp* v. *Hoey, supra; Phebe Warren McKean Downs*, 36 B. T. A. 1129; *Henry A. B. Dunning*, 36 B. T. A. 1222; appeal dismissed June 10, 1938; *Ralph L. Gray*, 38 B. T. A. 584. The grantor in the *Knapp* case had denied himself the right to amend so that the "income be paid to or for the use of the party of the first part [himself]." That case seems indistinguishable from the present case. Judge Patterson, now a member of the Circuit Court of Appeals, in deciding the *Knapp* case in the District Court, said:

On the face of the deed the grantor retained effective control over the disposition of the income of the trust, with only one limit: he could not make any change whereby the trust income would become payable to himself. He was the one person in the whole wide world who could not become a beneficiary. Clearly there was no intention that any part of the income might, "in the discretion of the grantor of the trust, * * * be distributed to the grantor or be held or accumulated for future distribution to him". So the income was not made taxable as his income by reason of section 167. It is equally clear that the trust was not revocable in terms; no power was reserved by the grantor to revest in himself title to any part of the corpus. So the case is not one of a revocable trust under section 166. These conclusions are in accord with decisions of the Board of Tax Appeals in *Downs* v. *Commissioner*, 36 B. T. A. 1129; *Dunning* v. *Commissioner*, 36 B. T. A. 1222, and *Blodgett* v. *Commissioner*, 37 B. T. A. ——, decided March 11, 1938.

The defendant makes a labored argument to the effect that the plaintiff, with power to cancel the interest of any beneficiary in income and in corpus, may cancel all such interests and leave a total void in beneficiaries, thereby making the trust revocable at his pleasure by force of section 23 of the New

York Personal Property Law, Consol. Laws, c. 41. * * * The defendant's argument comes down to saying that the grantor may do indirectly what he might not do directly.

Section 166 deals with revocable trusts and provides that where the power to revest in the grantor title to any part of the corpus of the trust is vested in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of that part of the corpus or the income therefrom, or in any person not having a substantial adverse interest in the disposition of that part of the corpus or the income therefrom, then the income from that part of the trust for the taxable year shall be included in computing the net income of the grantor. The grantor in the present case did not have power to revest in himself title to any part of the corpus of the trust nor was such a power vested in the grantor or in any other person, nor was it vested in any person not having a substantial adverse interest in the disposition of the corpus of the income therefrom. Though there was a power to revoke in the beneficiaries, their interests were adverse. Consequently, section 166 does not apply in this case.

The next argument of the respondent requires little discussion. He says this trust lacks substance. The petitioner did not retain the beneficial ownership of the trust property. All of the income was paid to and used by his wife as she saw fit. The fact that he signed most of the checks on one of her three bank accounts as a convenience to her and to pay her bills, seems unimportant here. Cf. *Poe* v. *Seaborn*, 282 U. S. 101. He reserved the power to vote the Wrigley stock and also power over the disposition of that stock, but in doing so he did not deprive the trust of substance so that it should be disregarded for income tax purposes. Cf. *Henry A. B. Dunning, supra.* It is a separate entity for tax purposes. The facts here do not present a situation similar to that found in *Benjamin F. Wollman*, 31 B. T. A. 37; *William C. Rands*, 34 B. T. A. 1107; *Estate of A. C. O'Laughlin*, 38 B. T. A. 1120; *Stoddard* v. *Eaton*, 22 Fed. (2d) 184, or in any of the other cases cited by the respondent. Likewise, the alternative contention of the respondent is without merit. Any of the trust income which was used to pay premiums on insurance policies upon the life of the petitioner was used for that purpose, not in accordance with or. as directed by the provisions of the trust deed, but because the petitioner's wife in the exercise of her rights of ownership, after receiving the money from the trustee, chose to use it for that purpose by paying it into a trust which she had created. *Frederick K. Barbour*, 39 B. T. A. 910; *George Washington, Sr.*, 36 B. T. A. 74, 81. Funds used for this purpose under these circumstances are not taxable to the grantor under section 167 (a) (3).

The facts involved in the second issue have all been stipulated. The respondent concedes that those facts bring this case squarely within our decision in *Sidney W. Winslow, Jr.*, 39 B. T. A. 373. We hold, following that decision, that the annual installment, exclusive of interest, received by the petitioner in 1934 as principal under a life insurance contract, is exempt from income tax under section 22 (b) (1) of the Revenue Act of 1934.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

STERNHAGEN, dissenting: In my opinion, the power reserved by the settlor in the indenture is approximately equivalent to ownership and control of the corpus and income, and therefore he is properly taxable under sections 166 and 167.

By indenture, the settlor has the right "to alter or amend in any respect whatsoever the provisions of this indenture relating to the disposition of the income and principal of the trust estate or of the separate shares into which the same may be divided, and to change any beneficial interest hereunder." This is restricted by the proviso "that the Grantor shall have no power to revoke this trust in whole or in part, or to revest in himself title to any part of the principal of the trust estate" and "that he shall have no power to amend this indenture so as to direct that any part of the income of the trust be distributed to him or be held or accumulated for future distribution to him, or so as to direct that any part of the income of the trust be applied by the Trustee to the payment of premiums upon policies of insurance on his life." By a separate provision, any beneficiary may terminate the trust to the extent of his interest, in which event the trustee is required to transfer such portion of the principal to the settlor.

Thus the settlor is at all times in a dominant position with regard to both the principal and the income, for no one, whether he be a present beneficiary or not, has a superior control except by the settlor's voluntary action or inaction. He may, if he chooses, change any or all of the beneficiaries and substitute whomsoever he will to receive income upon any conditions he chooses to name. A beneficiary who holds by such sufferance can not, it seems to me, be regarded as one having a substantial interest adverse to that of the settlor. *Rollins* v. *Helvering*, 92 Fed. (2d) 390, 394, 395. I see no obstacle to prevent the settlor from ousting any or all of the beneficiaries or requiring a beneficiary to terminate the trust as to the portion of the principal from which he has been designated to receive the income and thereby bringing about an express trust for the grantor *pro tanto* or a resulting trust for failure of a beneficiary.

For the purpose of the revenue act, it is no answer to surmise that the settlor had no such intention when he executed the indenture. Indeed, the power of attorney over his wife's bank account and its use gives some support to an inference of his intention to control the use of the income, for in 1933 he drew 300 of the 302 checks on the account and in 1934, 332 of the 338. In every substantial sense it seems to me that the settlor retained the power to revest the corpus in himself and to control the disposition of the income so that it might, at his election, come to him. This is clearly within the intendment of sections 166 and 167, and I think may properly be regarded as within the language.

It is also a corollary of the proposition that the reserved power to change the beneficiaries precludes the transfer from being regarded as so complete as to be subject to the gift tax, *Estate of Sanford* v. *Commissioner*, 308 U. S. 39, or as to prevent the imposition of estate tax upon the trust principal at his death, *Porter* v. *Commissioner*, 288 U. S. 436. The *Sanford* case expressly left the present question undecided, and I think the imposition of the income tax upon the settlor is necessary if the several sections of the revenue act are to be harmoniously applied.

MELLOTT, HILL, DISNEY, and OPPER agree with this dissent.