Glenn S. Allen, Sr. v. Commissioner.
Allen v. Commissioner
Docket No. 2149.
United States Tax Court
1944 Tax Ct. Memo LEXIS 395; 3 T.C.M. (CCH) 39; T.C.M. (RIA) 44014; January 19, 1944
*395 Charles H. Farrell, Esq., for the petitioner. Melvin S. Huffaker, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined a deficiency of $9,148.44 in income tax for the year 1940. The only question for determination is whether petitioner, as grantor of a trust, is taxable on a dividend of $24,006.95 received by the trust after December 11, 1940, when the trust was made irrevocable. Petitioner concedes that income received by the trust prior to December 11, 1940, is taxable to him. Petitioner is a resident of Kalamazoo, Michigan, and filed his income tax return for the year 1940 with the collector of internal revenue for the district of Michigan. Findings of Fact On November 16, 1928, petitioner created a revocable trust, naming the First National Bank and Trust Company of Kalamazoo as trustee. The corpus of the trust consisted of certain real estate, title to which was duly transferred to and benefit of petitioner's children: Glenn S. Allen, Jr., born January 8, 1914; Barbara Jane Allen, born May 29, 1915; Jollie N. Allen, born July 8, 1916; and Rosemary Ann Allen, born April 14, 1922. The trust indenture provided that *396 the trustee should collect the rents and profits from the property, pay the taxes, keep the premises insured, and make repairs, alterations and improvements. It also authorized the trustee to rent, mortgage or sell the premises in its exclusive discretion, "it being the intention of this instrument to grant unto said Trustee the broadest power and except as herein specifically limited, to manage and control said premises as though said Trustee actually owned the same". In the event of the property being sold, the trustee was authorized to invest and reinvest the funds derived from such sale in first mortgage bonds or in municipal or government bonds. Until the property was sold the trustee was authorized to invest the rentals from the property in such securities as petitioner might direct in writing, but the trustee was absolved from all liability in connection with investments made under petitioner's direction. The trustee was also directed in its discretion, by and with the consent of petitioner during his lifetime, to make equal distributions of trust income to petitioner's four children above named. The trust indenture also provided that the trustee in its discretion, and with *397 the consent of petitioner during his lifetime, should make advancements of principal in case the property was sold, but not otherwise, to any of the beneficiaries who might actually be in want, but all such advances were to be charged against the share of such beneficiary. The trustee was given the power, with the consent of petitioner during his lifetime, to make a final distribution and division of the trust estate when the youngest of the living beneficiaries should have attained the age of twenty-five years. The share of any beneficiary who may have died prior to such final distribution was to go to the issue of said beneciary, or in default thereof, to the other beneficiaries. On December 29, 1930, petitioner executed an indenture which was accepted by the trustee, whereby petitioner was permitted "from time to time to add to and include other real property and personal property to the Trust". Prior to June 24, 1931, petitioner owed substantial amounts to the First National Bank and Trust Company of Kalamazoo, the corporate trustee. At the request of the bank, which desired further collateral for petitioner's personal obligations, petitioner, on June 24, 1931, executed an indenture *398 which authorized the trustee to "use any of the properties of said trust estate toward the payment of any indebtedness owing by said party of the first part [petitioner] hereto to said The First National Bank and Trust Company of Kalamazoo, whether such indebtedness is for the benefit of said trust or for the benefit of said Glenn S. Allen personally; which power vested in said trustee shall take precedence over any interest of any of the beneficiaries in said Trust Estate". This indenture also provided that neither the income nor the principal of the trust should be distributed to any of the beneficiaries during the lifetime of petitioner except with his consent. In June of 1940, petitioner decided that the trust for the benefit of his children should be made irrevocable. His business had prospered, and the collateral held by the bank for his personal obligations had increased in value. As a result, the bank was willing to release to petitioner some of the shares of stock held by it as collateral for petitioner's indebtedness. Among the assets of petitioner held by the bank as collateral were 382 shares of capital stock of Inland Bonding Company, an Indiana company. Petitioner was *399 one of the organizers of that corporation and its vice-president and director during the taxable year. In June of 1940, petitioner intended to make a gift to the trust of 225 shares of Inland Bonding Company stock, which was held by the bank as collateral for petitioner's personal indebtedness. At that time the corpus of the trust consisted of 85 shares of Inland Bonding Company stock, a part of which had been purchased by the trustee out of funds in its possession, and the balance had been acquired as a stock dividend. Petitioner believed that these shares were subject to the bank's lien by virtue of the amendment of the trust indenture on June 24, 1931. He also believed that it would be unwise for him to turn over to the trust an additional 225 shares of Inland Bonding Company stock as long as the amendment of June 24, 1931, was in existence. During the summer of 1940, negotiations were carried on by petitioner with the bank to increase the corpus of the trust by a gift of 225 shares of Inland Bonding Company stock upon the condition precedent that the bank should consent to an amendment of the trust indenture whereby the trust corpus could not be used for the purpose of the payment *400 of any personal indebtedness owed by petitioner. By October 4, 1940, the bank agreed to such an amendment of the trust indenture and thereupon petitioner gave a sixty-day notice to the Inland Bonding Company, pursuant to the by-laws of that company, of his intention to dispose of 232 shares of that company's stock. At that time, the company knew of his intention to give the stock to the trust. On December 10, 1940, petitioner met with officials of the bank in the office of the bank's attorney and an agreement was dictated by the bank's attorney whereby the bank released 232 shares of Inland Bonding Company stock which it was holding as collateral for petitioner's personal indebtedness to the bank. The agreement also provided for petitioner's increasing the corpus of the trust by a gift of these 232 shares and the trust was also made irrevocable. Petitioner "relinquished all right and power to amend, alter or revoke" the trust. The parties were instructed that the indenture would be ready for signatures at about 4:30 o'clock of December 10, 1940; when they returned at that time they were informed that the instrument had not yet been typed but would be ready early the next morning; *401 the indenture was signed by petitioner and accepted by the trustee early in the morning of December 11, 1940; thereupon the certificate for 232 shares of Inland Bonding Company stock was removed from the collateral portfolio of the bank and delivered to petitioner who took them to the office of the Inland Bonding Company and delivered them to the secretary of that company with the request that they be transferred to the name of the trustee. The transfer was made and a certificate for 232 shares of the company's stock dated December 11, 1940, and issued to the First National Bank and Trust Company of Kalamazoo, as trustee, was mailed to the trustee by the Inland Bonding Company on December 12, 1940. On December 11, 1940, after the 232 shares had been delivered to the Inland Bonding Company for transfer, a meeting of the board of directors of that company was held, and at this meeting a cash dividend of $70 a share and a stock dividend was declared on the capital stock of the corporation payable on December 16, 1940, to stockholders of record on December 14, 1940. The dividend on the Inland Bonding Company stock held by the trustee under the trust indenture which the parties agree was *402 of the value of $24,006.95, was received by the trustee on December 26, 1940. The meeting of the directors of the Inland Bonding Company held in the afternoon of December 11, 1940, was originally scheduled for December 18, 1940, but was made earlier for the convenience of one of the directors other than petitioner. Prior to the meeting, petitioner knew that a sizable dividend would be declared. The dividend declared and paid by the Inland Bonding Company for the year 1939 was between $6.00 and $8.00 per share. At all stockholders' meetings of the Inland Bonding Company subsequent to December 11, 1940, petitioner voted the stock of that company owned by the trustee under proxy from the trustee. A Federal income tax return was filed for the trust for the taxable year disclosing net income of $26,536.06. Of this amount, $6,046.98 was reported as taxable to the fiduciary. The remaining sum of $20,489.08 was shown in Schedule A of the return as being taxable to the grantor and beneficiaries of the trust as follows: Glenn S. Allen (petitioner)
$ 2,529.11
Glenn S. Allen, Jr.
5,986.65
Barbara Allen Bock
5,986.66
Jollie N. Allen
5,986.66
$20,489.08 The sum of $2,529.11 distributed *403 to petitioner represents income received by the trust prior to December 11, 1940. On December 11, 1940, all of petitioner's children were alive. All were of age, with the exception of Rosemary Ann Allen who was a minor. During the taxable year, the sum of $272.50 was paid by the trustee toward the expense of education of Rosemary Ann Allen. The balance of her share of the income was transferred to her account to be invested in building and savings accounts and held for her benefit. Economic gain was not realized or realizable by petitioner under the provisions of the trust. The rights and powers reserved to petitioner by the trust indenture did not constitute the equivalent of ownership of the trust corpus or income. Opinion The sole question for determination is whether petitioner, as grantor of a trust created for the benefit of his children, is taxable on income received by the trust after December 11, 1940, when the trust was made irrevocable. The specific question is whether a dividend in the amount of $24,006.95 on capital stock of the Inland Binding Company, declared on December 11, 1940, and payable on December 16, 1940, to stockholders of record on December 14, 1940, *404 is taxable to petitioner as grantor of the trust. Petitioner concedes that income received by the trust prior to December 11, 1940, is taxable to him. Although respondent contends that the dividends is [are] taxable to petitioner under the provisions of sections 166, 167, and 22(a) of the Internal Revenue Code, his argument on brief is devoted entirely to the applicability of section 22(a) as that section has been construed by the Supreme Court in Helvering v. Clifford, 309 U.S. 331. He also argues that since petitioner was a director and officer of the Inland Bonding Company and in that capacity knew that a sizable dividend would be declared in December 1940, the gift of the shares of Inland Bonding Company to the trust was made by petitioner for the purpose of avoiding increased surtaxes on his personal income tax. We think respondent's contentions must be rejected. Neither section 166 nor section 167 of the Code is applicable to the trust indenture as amended on December 11, 1940. Under no circumstances could title to any part of the trust corpus be revested in petitioner under section 166, nor could any part of the trust income be held or accumulated *405 for future distribution to petitioner under section 167. It is, therefore, held that these sections have no applicability to the trust indenture as amended. Respondent's brief is devoted entirely to his contention that petitioner retained such rights and benefits in the trust property as to make him in reality the owner of the property within the doctrine of the Clifford case, supra. Respondent's argument that petitioner retained rights and benefits sufficient to constitute him the owner of the trust corpus and so to charge him with the taxable income from the trust is predicated upon the following powers reserved by petitioner in the trust indenture: (1) the trustee could not distribute trust corpus or trust income to the beneficiaries during petitioner's lifetime without his consent; and (2) petitioner reserved the right to direct the kind of securities in which the trust corpus should be invested. Upon examination of the trust indenture in its entirety, however, we find that the trust was irrevocable and was for a long term. Petitioner surrendered all rights of reversion and could neither recover the corpus nor share in the income of the trust. The bank was named as *406 trustee and was given broad powers of management over the trust property. In connection with the real estate owned by the trust, the trustee was authorized to rent, mortgage, or sell the property in its exclusive discretion. During the taxable year, three of the beneficiaries were of age, and their share of the trust income was distributed directly to them. In view of these circumstances, the fact that neither trust corpus nor income could be distributed to the beneficiaries without petitioner's consent is not determinative. At the time the trust was created, the beneficiaries were minors, ranging in age from six to fourteen years. It is natural that petitioner should feel that he, rather than the corporate trustee, would best know the needs of his children and that he should be consulted by the trustee before any distribution should be made. The same feeling engendered the restriction on the trustee as to the investments in securities. The trust was created for the benefit of petitioner's children and his only concern was for their welfare. He believed that the interests of the trust would be best served by his direction of its investment policy. These rights, however, did not result *407 in any economic gain to him. Helvering v. Stuart, 317 U.S. 154. The administrative power over investments and the right to restrict the trustee in the distribution of trust corpus or income were not the fair equivalent of full ownership of the trust corpus. These powers were not such a bundle of rights as the Supreme Court in the Clifford case held to be a substantial retention of the benefits of ownership. The trust here is entirely distinguishable from the one involved in the Clifford case, supra. In Commissioner v. Branch, 114 Fed. (2d) 985, the Circuit Court of Appeals for the First Circuit said: Helvering v. Clifford rests on its particular facts, as the court was careful to say, * * * Where the grantor has stripped himself of all command over the income for an indefinite period, and in all probability, under the terms of the trust instrument, will never regain beneficial ownership of the corpus, there seems to be no statutory basis for treating the income as that of the grantor under Section 22(a) merely because he has made himself trustee with broad power in that capacity to manage the trust *408 estate. * * * This statement of law has been quoted with approval by the Circuit Court of Appeals for the Seventh Circuit in Commissioner v. Betts, 123 Fed. (2d) 534. See also, Jones v. Norris, 122 Fed. (2d) 6; Commissioner v. Armour, 125 Fed. (2d) 467; Suhr v. Commissioner, 126 Fed. (2d) 283; George H. Whiteley, 2 T.C. 618; Lura H. Morgan, 2 T.C. 510. The facts of the Whiteley case, supra, are very similar to the facts of this case. There, the grantor retained, among other powers, the right to determine the portion of trust income or corpus to be paid to the beneficiaries, the right to approve all investments and reinvestments of trust funds, and the right to vote all shares of stock in the trust. The Court nevertheless held that the bundle of rights which the donor retained were not the equivalent of ownership contemplated by the Clifford case. Respondent also argues that the purpose of the gift of 232 shares of Inland Bonding Company stock to the trust was to minimize petitioner's *409 individual income tax. His argument is based upon the fact that petitioner as an officer and director of the Inland Bonding Company knew that a sizable dividend distribution would be made by that company. The testimony is convincing, however, that petitioner contemplated the gift to the trust for two years prior to December 11, 1940, but he was reluctant to complete the transaction as long as the trustee could use the trust assets to satisfy petitioner's personal indebtedness. Negotiations were commenced in June 1940 between petitioner and the bank officials to eliminate this provision from the trust indenture and to complete the gift. At this time, petitioner's financial condition had improved and the collateral held by the bank for his personal obligations had increased in value so that the bank was willing to release a number of shares of Inland Bonding Company stock from its collateral portfolio. Due to various delays, however, it was not possible to have the formal instrument executed until the morning of December 11, 1940. Respondent's contention that the gift to the trust on December 11, 1940, was made by petitioner for tax purposes is similar to the contention made and rejected *410 by this Court in Lura H. Morgan, supra, where the Court said: The Commissioner likewise stresses the fact that petitioner was not unconscious of the tax consequences of her action, but we do not know what can be made of this. So long as the gift is valid and real a motive to reduce taxes becomes immaterial. Here, there is no doubt that the gift was complete and valid in every respect prior to the declaration of dividends by the directors of the Inland Bonding Company. It is fundamental law that a stockholder of a corporation has no legal right to share in the profits from the corporate business until a dividend has been declared. It is the declaration of the dividend which creates both the dividend itself and the right of the stockholder to demand and receive it. Fletcher, Cyclopedia of The Law of Private Corporations, Volume 11 § 5321. Hence, it cannot be held that the principles enunciated in Helvering v. Horst, 311 U.S. 112, upon which respondent relies, is applicable here. Cf. Lillian M. Newman, 1 T.C. 921, 927. A similar distinction was made in Estate of Bertha May Holmes, 1 T.C. 508, 512, *411 where this Court said: * * * We do not interpret the Horst case, however, as holding that when a gift is made by the owner of not only the fruit but the tree as well, that the former owner is taxable on any of the fruit that grows on the tree after the date of the gift and when he is no longer the owner of the tree. We see no warrant to give the Horst case any such interpretation as that. Therefore, in arriving at our conclusion we wish to make it plain that we are not holding that any of the dividends credited to the stock after the date of the gift was income to decedent. * * * Respondent's final argument is that petitioner is taxable upon the income of the trust for his minor child, Rosemary, since $272.50 was paid by the trustee to Kalamazoo College during the taxable year toward the expenses of Rosemary's education. Respondent apparently does not rely on Helvering v. Stuart, supra, since he does not cite it in this regard. In any event, in that case, the trust indenture specifically provided that the trustees were to apply the net income from the trusts for the education, support and maintenance of the minor children of R. Douglas *412 Stuart. The Court there held that petitioner, R. Douglas Stuart, was taxable on the total income from the trusts since part of the income was used to satisfy petitioner's parental obligation. Here, however, the trust indenture does not authorize the trustee to use any of the trust income for the education, support, or maintenance of the beneficiaries. Under Michigan law, the obligation of such support is upon the father. Lawrence v. Baxter, 275 Mich. 587. In Lillian M. Newman, supra, the Court in rejecting a similar contention made by respondent said: * * * There are two answers to this argument. Assuming, arguendo, that a duty to support rested upon the mother, the trust instruments are silent as to the use to which the trust income is to be put. They simply direct that the income shall be paid annually to the son and daughter. They were not trusts for the minors' support. It is well settled that Douglas v. Willcuts, 296 U.S. 1, which was the Supreme Court's authority for the Stuart case, does not apply where there is a lack of agreement or provision in the trust indenture *413 for application of trust income to the grantor's obligation. Stephen Hexter, supra, p. 492; Everett D. Graff, 40 B.T.A. 920, 922; affirmed on another issue, 117 Fed. (2d) 247; * * * The other reason is that, notwithstanding the New York statute relied upon by the Commissioner, the rule in that state appears clearly to be that the primary duty to support and educate minor children rests upon the father. * * * And as long as the father is able financially to carry this burden, the child's separate estate and income may not be used for its support. See also, Henry A. B. Dunning, 36 B.T.A. 1222; Ralph L. Gray, 38 B.T.A. 584. Accordingly, it is held that petitioner is not taxable on the income received by the trust after December 11, 1940. Decision will be entered for the petitioner.