In the Matter of the Accounting of FIFTH AVENUE BANK OF NEW YORK et al., as Trustees under the Will of FRANK EVELAND, Deceased.

GEORGETTE L. E. FIFIELD, as Administratrix of the Estate of F. WINSOR EVELAND, Deceased, Appellant.

WINSOR G. EVELAND et al., Appellants and Respondents.

BERN BUDD, as Special Guardian for MARYLYN L. EVELAND et al., Infants, Respondent and Appellant.

FIFTH AVENUE BANK OF NEW YORK, as Trustee under the Will of FRANK EVELAND, Deceased, Respondent.

Argued June 11, 1940; decided October 8, 1940.

*Benjamin W. Moore, Philip A. Obst* and *Margaret J. Moore* for Georgette L. E. Fifield, as administratrix of the estate of F. Winsor Eveland, deceased, appellant.

*Harvey M. Bagg* and *Edward A. Voesseler* for Winsor G. Eveland et al., appellants and respondents.

*Bern Budd*, special guardian, *Edwin K. Bertine* and *Frederick F. Hufnagel* for Marylyn L. Eveland et al., infants, respondents and appellants.

*Edward F. Manion* and *H. A. Cushing* for respondent.

RIPPEY, J. This proceeding was brought in the Surrogate's Court of Westchester county for the judicial settlement of the final account of the trustees under the last will and testament of Frank Eveland, for the construction of certain provisions of his will and for directions as to the disposition of principal and accumulated income of the residue of his estate now in the hands of the trustee. We are in accord with the correctness of the decisions of the courts below in all matters upon which they were able to agree. We think the Surrogate correctly decided what disposition should be made of the residue of the estate except in a minor particular to which we will later refer.

The testator died on May 6, 1926, leaving a will dated October 9, 1921, and a codicil dated June 29, 1923, which were admitted to probate on May 25, 1926. He left him surviving a widow, Ella V. Eveland, a son, F. Winsor Eveland, and three grandchildren, all of whom were the children of that son. The son died intestate April 3, 1928. The widow of the testator died March 2, 1938. The grandson arrived at the age of twenty-one years on May 15, 1928, but the two granddaughters, Marylyn L. and Jule C. Eveland, were and still are under twenty-one years of age. Two of the three grandchildren were in being when the will and codicil were executed; all three were alive both when the testator and his son died.

The question of construction arises under the " Fourth " paragraph of the will which disposes of the residuary estate of the testator as and if modified or changed by the " First " paragraph of the codicil. He gave the residue to his trustees to hold, invest, etc., and pay over the income as provided in three subdivisions of paragraph " Fourth " of the will. Under subdivision (1) he provided that his wife should

receive $6,000 annually from the net income of the trust for life, payable in quarterly installments or at such other times as might be mutually agreed upon between her and the trustees, and the entire net income during her lifetime, though it should be more than $6,000 per year, in the event his son should predecease him or survive him and die before the death of his wife. In subdivision (2) he provided that the entire balance of the net income remaining after payment to his wife of $6,000 per year for her life if she survived the testator should be paid annually to the son for life. In that subdivision he also provided that if the wife should predecease him or should survive him but die before the death of the son, then from the date of her death the son should receive the entire net income for life subject to payment by the trustees to or for the benefit of the grandson, W. G. Eveland, of the annual sum of $1,500. Subdivision (3) then reads as follows:

"(3) Upon the death of my said wife, Ella V. Eveland, or of my said son F. Windsor Eveland, whichever shall happen last, the principal of this trust fund and all earnings or accumulations thereon then remaining unclaimed in the hands of my said trustees or of their successor or successors in this trust, after deducting the expenses incident to the trust, is to be paid over and distributed among the children of my said son F. Windsor Eveland, then living if any, as follows: seventy-five per cent (75%) thereof to my grandson W. G. Eveland; the balance to be equally divided among my other grandchildren, the issue of any deceased child to take the share of their deceased parent, by right of representation. But in case there is not then living any child of my said son, F. Windsor Eveland, or any issue of any deceased child, then and in such case, the whole of said principal trust fund and the net earnings and accumulations remaining shall be paid over and belong to these persons who would have been entitled to my personal estate, if I had died intestate at the time of the final distribution of my estate, in accordance with the Statute of Distribution of the State of New York existing at that time."

The codicil contains paragraphs numbered " First " and " Second." In the " Second " paragraph the testator

changes his executors and trustees in part. The "First" paragraph starts off: "Subdivision numbered three, paragraph fourth on the third page of my Will is changed so as to read as follows:" With certain words supplied by the courts below which were evidently omitted through inadvertence by the testator, this provision of the codicil is in the identical wording of subdivision 3 of paragraph "Fourth" of the will which is quoted above except that one sentence thereof was changed in the codicil to read as follows: "Seventy-five per cent (75%) thereof to my grandson W. G. Eveland, when he reaches the age of thirty-five years, the balance to be equally divided among my other grandchildren, when each reaches the age of thirty-five years, the issue of any deceased child to take the share of their deceased parent, by right of representation."

We think it was the clear intent and purpose of the testator, as exhibited in the will and codicil, to fix as of the date of death of the widow (who was the last survivor of the life beneficiaries) both the persons who should take the remainder and the share which each should take. He repeated verbatim in the codicil the words of gift contained in the will, and provided by a separate clause in the codicil that his will should remain in full force and effect except as to any changes therein made. It is quite clear that it was his intention in making the codicil to leave intact those provisions of his will. By the codicil, the testator did not postpone a determination of either the persons who would take or the share which each would take in the residue. If the testator had intended that each share should not vest until the grandchild entitled thereto should reach the age of thirty-five years, no reason can be found for the omission to add clauses in the codicil providing for the continuance of the trust and of provisions relating to the interest or income on the share. Such an omission is strong evidence against an intention that the ownership should be suspended during that period of time. (*Quade* v. *Bertsch*, 65 App. Div. 600; affd., 173 N. Y. 615.) There was no intent that vesting of title to the respective interests should be postponed nor does the codicil by express terms

or by implication so provide. It seems clear, therefore, that each grandchild became vested finally and indefeasibly with the title to his or her share of the remainder upon the death of the widow — the grandson to seventy-five per cent thereof and each granddaughter to twelve and one-half per cent thereof.

The testator failed to express in words his intention concerning the disposition of the income from each share or the manner and by whom the share should be held until the owner became thirty-five years of age. By fair implication, however, it [seems that the testator, by making the codicil, intended that the share of each grandchild should remain in the hands of the trustee until the owner should reach the age of thirty-five years, at which time that share with accumulated unpaid income should be paid over to the proper owner. Upon the whole will the inference is that the income was intended to be paid during the interval as it accrued. Such trusts would be invalid as violating the statute limiting the period for allowable restriction of the power of alienation. Premature termination of the trusts which the testator attempted to create cannot affect or change the persons who take the remainder or the share that each will take or change the remainder. The excision of the provision in the codicil merely gives immediate effect to a remainder which would otherwise be postponed. The dominant scheme of the testator shown both in the will and the codicil was to vest in his grandchildren living at the death of the last survivor of the two life beneficiaries the entire corpus of his residuary estate and unclaimed accumulated income in certain specified shares. The scheme for distribution was not so intimately tied up with the alleged invalid provision of the codicil as to be inseparable from it and thus override the purpose of the testator and make nugatory his whole clearly defined scheme. We think the testator neither intended nor expected such a result to obtain by the making of the codicil. The persons who take and the share each takes were unalterably fixed by the testator. Whether the trusts are valid or void and whether the trusts terminated at the death of the widow or

continued for the additional term, the same persons will take in the same proportions. Under such circumstances, the invalid parts of the instrument admitted to probate may be expunged without destroying the will as a whole, without interfering with the dominant purpose of the testator, and without creating intestacy, in whole or in part (*Kalish* v. *Kalish*, 166 N. Y. 368, 375; *Matter of Hitchcock*, 222 N. Y. 57; *Matter of Chittick*, 243 N. Y. 304; *Matter of Durand*, 250 N. Y. 45; *Oliver* v. *Wells*, 254 N. Y. 451; *Looram* v. *Looram*, 269 N. Y. 296). Thus, as was said in *Kalish* v. *Kalish* (*supra*) at page 375: " When it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be."

It does not necessarily follow, however, that a provision that the trustee should continue to hold the trust fund for each infant until she reaches the age of twenty-one would also be invalid, although in apparent violation of the provisions of section 11 of the Personal Property Law (Cons. Laws, ch. 41; *Matter of Trevor*, 239 N. Y. 6, 16). There was an implied gift of income before she became entitled to receive the corpus of the trust. The Surrogate correctly directed that the share of the grandson with accumulated unclaimed income should be paid over to him at once and that the share of each granddaughter should be paid to her upon attaining the age of twenty-one years. He had no power to direct the accumulation of income of such shares in the hands of the trustee during the interval between the death of the widow and the majority of the infants against the testamentary intent.

The order of the Appellate Division and the decree of the Surrogate's Court should be modified in accordance with this opinion and, as so modified, affirmed, with costs to each party filing a brief, payable out of the estate.

LEHMAN, Ch. J., LOUGHRAN, FINCH, SEARS, LEWIS and CONWAY, JJ., concur.

Ordered accordingly.