**SCHOELLKOPF v. McGOWAN, Collector of Internal Revenue.**

Civil No. 526.

District Court, W. D. New York.

Feb. 14, 1942.

Franchot, Runals, Cohen, Taylor & Rickert, of Niagara Falls, N. Y. (Paul P. Cohen, of Niagara Falls, N. Y., of counsel), for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Fred J. Neuland, Sp. Assts. to Atty. Gen., and George L. Grobe, U. S. Atty., and R. Norman Kirchgraber, Asst. U. S. Atty., both of Buffalo, N. Y., for defendant.

KNIGHT, District Judge.

### Statement of Stipulated Facts.

This is an action by Paul A. Schoellkopf, a taxpayer, against George T. McGowan, Collector of Internal Revenue, for the 28th District of New York, to recover certain taxes and interest collected by the defendant from the plaintiff under protest.

The plaintiff on November 14, 1917, and March 3, 1921, executed instruments by which the plaintiff transferred certain shares of stock to himself as trustee for his infant son, Paul Penn Schoellkopf, now known as Paul A. Schoellkopf, Jr. These instruments purported to convey to the plaintiff's infant son full beneficial and equitable title, but reserved legal title in the plaintiff during the son's minority, in trust, with full power to sell, exchange, dispose of or transfer the stock as if the son were of full age. All the dividends, income, increment or rights were to be held by the plaintiff for the benefit of the son, but the plaintiff retained the right to re-invest the income, increment or proceeds during the minority of the son for the benefit of the son.

In 1925 the plaintiff applied for and obtained two policies of life insurance on his life, in each of which the said infant son, Paul Penn Schoellkopf, was the beneficiary. In 1927 plaintiff's wife procured two policies on the life of the plaintiff, and she was then named beneficiary in each. Later in the same year the beneficiary was changed to the infant son with contingent interest in the plaintiff if he survived wife and son. On May 11, 1932, the plaintiff executed written instruments purporting to transfer all of his right, title and interest in the four policies of insurance "together with all benefits and advantage to be derived therefrom." The plaintiff never individually paid any premiums on any of the policies.

During the year 1935 the plaintiff received an income of $27,581.90 from the trust estate. The plaintiff deposited the moneys of Paul Penn Schoellkopf in an account at the Power City Trust Company in the City of Niagara Falls, New York, in the name "Paul Penn Schoellkopf c/o Paul Schoellkopf, Niagara Falls Power Company, Niagara Falls, New York." This income of $27,581.90 consisted of $11,606.90 interest, and $15,975 dividends on shares of stock held in domestic corporations.

During the year 1935 the plaintiff withdrew from the account of "Paul Penn Schoellkopf c/o Paul Schoellkopf, Niagara Falls Power Company, Niagara Falls, New York," the sum of $13,363.50 and applied it to the payment of premiums on the aforesaid four life insurance policies by which the life of plaintiff was insured and in which Paul Penn Schoellkopf was then the beneficiary.

The Commissioner of Internal Revenue included in the taxable gross income of the plaintiff the sum of $13,363.50, representing payments of premiums upon the aforementioned policies of life insurance. The Commissioner of Internal Revenue treated $5,393.77 as interest received during the said year by the plaintiff subject to normal tax and surtax, and $7,966.73 as dividends subject to surtax only.

The plaintiff duly filed with the defendant his individual income tax return for the calendar year 1935 on March 13, 1936, and such return was on a cash receipts and cash disbursements basis, and plaintiff paid to defendant the tax shown to be due on said return. The plaintiff on March 1, 1939, was notified of a determination of additional income taxes due from him for the calendar year 1935 in the amount of $6,690.48, and such deficiency plus the statutory interest computed thereon in the amount of $1,188.69 made an aggregate amount of $7,879.17 which was paid by the plaintiff under protest. Plaintiff thereafter duly filed a claim for a refund of the sum of $7,879.17 with interest thereon from March 7, 1939, the date of payment of the disputed amount. On May 10, 1940, the claim for such refund was disallowed by the Commissioner of Internal Revenue, and no part of said sum has been refunded or credited to the plaintiff. The plaintiff received all income and proceeds from the trust instruments and nothing was at any time paid toward the support or maintenance of the infant. All the income and proceeds were invested and re-invested by the plaintiff.

These facts have been stipulated, and the dispute is as to the effect thereof and the application of the law.

This action arises under the Revenue Act of 1934, as amended by the Revenue Act of 1935. The only pertinent sections of the Revenue Act that are involved are Section 167(a) (3) and Section 22(a):

"§ 167. Income for benefit of grantor

"(a) Where any part of the income of a trust—* * *

"(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor * * * then such part of the income of the trust shall be included in computing the net income of the grantor."

"§ 22. Gross Income

"(a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealing in property * * * also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

Treasury Regulation 86 (Art. 167 b) states the test of taxability to the grantor as follows: "The test prescribed by the Act * * * is whether he has failed to divest himself, both permanently and definitely, of every right which might, by any possibility, enable him to have such income, at some time, distributed to him, either actually or constructively."

The plaintiff contends the Commissioner of Internal Revenue wrongfully determined that the plaintiff was liable for the additional tax under Section 167(a) (3) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev. Code, § 167, and further that section 22(a), 26 U.S.C.A.Int.Rev.Code, § 22, is not applicable. The defendant holds that the plaintiff is taxable under Section 167 as determined by the Commissioner, and, even if plaintiff were not taxable under Section 167, plaintiff is taxable under Section 22(a).

In light of the fact that the immediate dispute arose under Section 167(a) (3), as the Commissioner determined the plaintiff to be liable for additional taxes under that section, we will first consider that section and later consider Section 22(a) under which defendant also contends plaintiff is liable for the additional taxes.

### Findings of Fact.

I. The first contention made by the plaintiff is that the premium payments on the insurance policies were made from the funds of Paul Penn Schoellkopf on deposit as aforesaid in the Power City Trust Company and did not constitute the application of the "income of a trust * * * to the payment of premiums" within the purview of this Section 167(a) (3). No merit is seen in this position. In making the deposit, as made, the trustee was simply carrying out the provision of the instruments. All the income from the so-called trust estate was so deposited. No part of such deposits were ever paid to the beneficiary or used for his benefit, and trustee had the specific right to re-invest any of these deposits. He did make withdrawals for investments. The manner in which these deposits were maintained clearly demonstrates that plaintiff acting as trustee paid the insurance premiums out of the trust income. There would have to be some more definite act of transfer to the beneficiary than here to show a release from the trust estate.

Barbour v. Commissioner, 39 B.T.A. 910, reversed 2 Cir., 122 F.2d 165, cited by the plaintiff, gives no support to his contention. In that case the payments of insurance premiums were paid directly by the beneficiary. They were not paid out of any moneys held on her behalf. The Circuit Court held that all income, including that thus applied, was taxable. George Washington, Sr., v. Commissioner, 36 B.T.A. 74, also cited by the plaintiff, shows an outright gift.

■ ■ II. It is asserted that the so-called trust agreements of November 14, 1917, and March 3, 1921, did not result in trusts within the meaning of the provisions of Section 167, supra. This assertion can not be sustained. The term "trust" is susceptible of different meanings. In construing instruments for the purpose of determining the liability for an income tax, the court will look to the instrument itself in its entirety. In construing such instruments we accept the definition in the instruments of terms used therein. Rollins v. Helvering, 8 Cir., 92 F.2d 390. See also Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916. The plaintiff takes the position that the transfers under the instruments aforesaid were in substance outright gifts with only the reservation of power of management and investment. He points, as support for this, to the provision that "the full, beneficial and equitable title to said stock is in the said Paul Penn Schoellkopf, my infant son," and urges that the execution of these instruments was merely a substitute for procuring the appointment of a guardian of the infant's property. Each instrument declares that it is a "trust upon and under which the stock is held." Each gives the trustee unrestricted discretion in the sale or disposition of the stock and the right to receive and re-invest the proceeds and income from such stock "without accountability for any loss sustained in the exercise of my unrestricted discretion in respect thereto." Cases almost without number might be cited to show tax liability predicated on agreements fairly comparable with these. If these agreements do not constitute a trust, the door for evasion of the payment of a tax is quite open. None of the New York cases cited by the plaintiff (Steinway v. Steinway, 163 N.Y. 183, 57 N.E. 312; Matter of Trevor's Will, 239 N.Y. 6, 145 N.E. 66; Matter of Eveland's Will, 284 N.Y. 64, 29 N.E.2d 471) aid him. Each involves the testamentary disposition of property and presents facts wholly dissimilar from those here.

■ ■ III. Next, it is urged that, assuming that these instruments constitute true trusts, the resulting trusts were not of the sort included in Section 167, supra. It is urged that Section 167(a) (3) applies only to insurance trusts and that the trustee had no authority to use funds of the trust estate to pay premiums. The purchase of insurance was an investment. The trustee, as seen, had broad powers in investments. The beneficiary derived a benefit by the payment of the premiums. Rand v. Helvering, 8 Cir., 116 F.2d 929, certiorari denied June 2, 1941, 313 U.S. 594, 61 S.Ct. 1120, 85 L.Ed. 1548, presented a situation which is comparable. There, as here, there was no specific authorization of the trustee to use the income to pay premiums on policies of insurance. The taxpayer was given power to invest and re-invest the income. In that case the court held the grantor taxable under Section 167, supra. To the same effect is Dunning v. Commissioner, 36 B.T.A. 1222. In neither of these cases was the trust an "insurance trust." "But taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed * * *." Corliss v. Bowers, 281 U.S. 376, 378, 50 S. Ct. 336, 74 L.Ed. 916.

Plaintiff directs attention to the language of Mr. Justice Roberts in his dissenting opinion in Helvering v. Clifford, 309 U.S. 331, 339, 60 S.Ct. 554, 558, 84 L.Ed. 788: "Congress provided, by § 219(g) (h) of the Revenue Act of 1924 [sec. 167 of Revenue Act of 1934], that if the grantor set up such a life insurance trust, or one under which he could direct the payment of the trust income to himself, or had the power to revest the principal in himself during any taxable year, the income of the trust, for the taxable year, was to be treated as his." This expression does not purport to limit the application of the section to insurance trusts. It is broad enough to include a trust of the type here. It seems to me that under the provisions of the instruments here the trustee had authority to invest income from the trust in insurance premiums.

■ IV. It is also contended by the plaintiff that this tax is illegal because the premiums paid on January 5, 1935, upon the two policies issued to the plaintiff, were not paid directly or indirectly out of any income received or accrued in the year 1935.

This contention can not be sustained. On December 31, 1934, the balance in the account of Paul Penn Schoellkopf was $6,782.-53. On January 2, 1935, the balance in the account was $9,332.53. The total trust income in 1935 aggregated $27,581.90, and the total insurance premiums paid on all the policies aggregated $13,363.50. The authorities support the position that the 1935 trust income, if legally taxable, is taxable to the extent of the amount of insurance premiums which were paid during the taxable year without regard to the source from which paid. Letts v. Commissioner, 9 Cir., 84 F.2d 760, 762, considered a comparable question. There the court said, in part: "The time unit we are dealing with is the taxable year; in this case, the calendar year 1927. In that year the trust received taxable income to the amount of $1,432,939.28 and distributed to its beneficiaries, as income, $1,185,088.24.. Whether it distributed the $1,185,088.24 before or after it received the $1,432,939.28 is immaterial. A beneficiary to whom income has been distributed by a trust cannot escape taxation thereon by showing that, at the time of such distribution, the trust itself had no income." See also cases therein cited and Rieck v. Commissioner, 41 B.T.A. 457. The "first in first out" rule for the application of payments and the numerous cases cited in support of this rule do not seem to me applicable. None of the cases claimed to support this present a situation showing a trust income paid out under circumstances like those shown here. Moore v. Commissioner, 39 B.T.A. 808, cited by the plaintiff, is authority only for the holding that where there is no trust income in a taxable year the income for another year can not be substituted or taxed in its place. Further, it was there said: "It follows that application of the provision in question [sec. 167] depends upon the existence in the tax year of policies upon which it would have been physically possible for the trustees to pay premiums and upon the amount of the premiums so payable."

V. As was said in Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 762, 77 L. Ed. 1439: "The meaning of the statute [Section 167(a) (3)] is not doubtful, whatever may be said of its validity." That case held that it was valid. Section 167(a) (3) reads: "Where any part of the income of a trust * * * is, or in the discretion of the grantor * * * may be, applied to the payment of premiums upon policies of insurance on the life of the grantor * * * then such part of the income of the trust shall be included in computing the net income of the grantor." This section finds its origin in Chapter 234, Act of June 2, 1924, Section 219, 43 Stat. 275. The policies of insurance were issued subsequent to that date. The income in question was applied by the trustee to the payment of premiums upon policies of insurance upon the life of the plaintiff-grantor of the trust. The intent of Congress in enacting this provision was well understood to be to prevent avoidance of taxation. It is one among other legislative steps taken in the same direction, as was pointed out in the opinion of Burnet v. Wells, supra. While it is true the plaintiff executed an instrument purporting to assign all of his interest in these policies of insurance to the beneficiary, this must be unavailing in the light of the language of the statute and its intent. While the construction to be placed upon Section 167(a) (3) has not been frequently considered by the courts, it was in Burnet v. Wells, supra, and Rand v. Helvering, supra. It is believed that the facts in these cases are comparable save that in Burnet v. Wells an insurance trust was considered. This difference is of no materiality as hereinbefore indicated. As was said in Burnet v. Wells, supra:

"Liability does not have to rest upon the enjoyment by the taxpayer of all the privileges and benefits enjoyed by the most favored owner at a given time or place. * * * Government in casting about for proper subjects of taxation is not confined by the traditional classification of interests or estates. It may tax, not only ownership, but any right or privilege that is a constituent of ownership. * * * A margin must be allowed for the play of legislative judgment. To overcome this statute the taxpayer must show that in attributing to him the ownership of the income of the trusts, or something fairly to be dealt with as equivalent to ownership, the lawmakers have done a wholly arbitrary thing * * * and laid a burden unrelated to privilege or benefit. * * *

"Insurance for dependents is to-day in the thought of many a pressing social duty. * * * By and large the purpose of trusts for the maintenance of policies is to make provision for dependents, or so at least the lawmakers might not unreasonably assume. * * * The relation between the parties, the tendency of the transfer to give relief

from obligations that are recognized as binding by normal men and women, will be facts to be considered."

The preceding quotation is in point here, and the facts satisfy the test of taxability in Treasury Regulation 86, supra.

■ VI. Some question was raised as regards the premiums paid upon the policies issued upon the application of the wife. It is claimed that these stand upon a different footing in that plaintiff had no interest in these. It is believed that this is not the fact. When a son was made beneficiary of these policies, the endorsement on them provided that all the benefits under the policies were to revert to the plaintiff in the event of the death of his wife, and on May 11, 1932, the plaintiff, as stated, transferred all his interest in these policies to the beneficiary.

■■ VII. It has been urged by the plaintiff that a construction making the preceding provision of Section 167, supra, applicable to the application of income to the payment of premiums on life insurance as here constitutes taking property without due process of law in violation of the Fifth Amendment and of Article I, section 2, of the Federal Constitution. Obviously if the plaintiff had an interest in the income intended by Section 167, supra, that interest was taxable. Obviously one can not legally be taxed on a property in which he has no interest. Hoeper v. Tax Commission of Wisconsin, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248, 78 A.L.R. 346. It is sufficient to cite Burnet v. Wells, supra; Reinecke v. Smith, 289 U.S. 172, 53 S.Ct. 570, 77 L.Ed. 1109, to support its constitutionality.

■ VIII. As heretofore stated, one position taken by the government is that the grantor is liable for payment of the tax under provision of Section 22(a) of the Revenue Act. That section provides that gross income means "Income derived from any source whatever." It is not believed that he is so liable. This question was not considered by the Commissioner in determining plaintiff's taxability, but it may be considered here. This contention is based upon the recent decision in Helvering v. Clifford, supra. That decision has created much critical and favorable comment, and though recently decided, it has been considered in numerous cases. See also Yale Law Review, December 1941, Vol. 51 (and cases therein cited), wherein is found a thorough expose of that case and the application of Section 22(a), supra. Helvering v. Clifford is distinguishable in its facts from the instant case in that there the trust was for five years only, and the corpus was to go to the grantor on the termination of the trust. It was there held that the creator of the trust was the owner of the fund under intent of 22(a) and that the trust was taxable to him. The grantor in the Clifford case retained a larger attribute of ownership in the trust properties than did this plaintiff.

IX. The stipulation of facts contains the following: "The plaintiff shall be deemed to have been sworn * * * and to have testified that at the time of the establishment of the said trusts * * * it was not contemplated by the plaintiff that any part of the income or principal of the trust fund * * * would be used for the payment of any premium or premiums upon policies of insurance issued upon the life of the plaintiff; and that neither of the said trusts was established for the purpose of paying from the income or principal * * *, premiums upon policies of insurance issued upon the life of the plaintiff, and that prior to the year 1925 no part of such income or principal was applied to the payment of any such premium; and the defendant shall be deemed to have objected to the said testimony upon the ground that it is incompetent, irrelevant and immaterial."

■ The objection to this testimony must be sustained. What the plaintiff "contemplated" is of no materiality in the light of the language of the trusts. The inquiry as to the purpose for which the trusts were established was also incompetent as calling for the conclusion of the witness and immaterial in the light of the clear and definite language of the trusts.

## Conclusions of Law.

■ 1. By virtue of the provisions of Section 167(a) (3), Internal Revenue Law, the plaintiff herein—the grantor of the trusts in question—was liable to a tax upon the amount of the income of the trusts hereinbefore set forth applied to the payment of premiums of insurance policies on the life of the plaintiff-grantor in the year 1935.

2. The plaintiff is not entitled to recover any sums paid on account of such premiums.

3. The complaint is to be dismissed with costs.