# Frank C. Rand, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 91795.   Promulgated July 18, 1939.

*Charles Nagel, Esq., Daniel N. Kirby, Esq., R. E. Blake, Esq., R. O. Rumer, Esq.,* and *Harry W. Kroeger, Esq.,* for the petitioner.

*F. R. Shearer, Esq., D. A. Taylor, Esq., Hartford Allen, Esq., R. F. Koehler, Esq.,* and *Homer F. Benson, Esq.,* for the respondent.

## OPINION.

OPPER: The first issue presented is whether petitioner is taxable on the income of six separate trusts created for the benefit of his children. Respondent bases his determination on section 167 (a) (3), Revenue Act of 1934, which provides:

SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

\*     \*     \*     \*     \*     \*     \*

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor \* \* \*;

then such part of the income of the trust shall be included in computing the net income of the grantor.

(b) As used in this section, the term "in the discretion of the grantor" means "in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question."

This issue can be considerably restricted by adopting for purposes of discussion a quotation from petitioner's reply brief (p. 28):

We do not doubt that if Mr. Rand, *by the trust instruments,* had *authorized or directed the trustee* to use or treat trust income in the manner described in section 167 (a) (3), and *if it had been so used,* then such conduct by the trustee could properly have been imputed to Mr. Rand as grantor, and he would have become individually liable in respect of the amounts so used.

Bearing in mind that, at least as to the amounts actually expended, there is no doubt that "trust income" has been "so used", this statement of petitioner's position leaves open only the question whether the trust instrument authorized that use. We think it must be concluded that it did.

Petitioner concedes that nothing in the statutes or decisions of Missouri affirmatively prohibits "investment" of trust funds in life insurance policies, nor is there any expression in the trust instrument directly bearing upon the question. It being elementary that construction of trust deeds is dependent on the grantor's intention, see *St. Louis Union Trust Co. et al., Trustees,* 40 B. T. A. 165, and that in case of doubt or ambiguity extraneous evidence of that intent may be considered, *Endowment Association* v. *Wood,* 4 Mackay (D. C.) 19, 29; see *Securities Investment Co.* v. *International Shoe Co.* (Mo.), 5 S. W. (2d) 682, 685, it seems to us that no more persuasive factor could possibly appear than the conduct of petitioner himself. It is inconceivable that his action as trustee can be viewed as inconsistent with his intention as grantor, since he is the same individual in both

instances, though acting in different capacities; and we are thus relieved from having to decide what would be the situation in a case where the trustee is a different person and his actions can not be attributed to the intention of the grantor on the one hand or to the petitioner taxpayer on the other.

We may add that any different view would place petitioner in a less favorable light than that suggested. "* * * it is at least unusual that a taxpayer should be heard to assert the possibility of an adjudication of alleged misconduct and breach of trust, as relieving him from tax liability which is predicated upon the assumption of the honesty and legality of his acts. * * *" *Board* v. *Commissioner*, 51 Fed. (2d) 73, affirming 14 B. T. A. 374; certiorari denied, 284 U. S. 658. If the payment of premiums was unauthorized it was a breach of trust for which petitioner could be held to account. His motive would be immaterial. Restatement of the Law of Trusts, § 201, a. He could not be heard to claim a credit as trustee for the funds so used, *Cornet* v. *Cornet*, 296 Mo. 298; 190 S. W. 333, 341, 342; and the presumption would be inescapable that premiums paid for insurance policies on his own life payable to beneficiaries of his own choice, resulting in recognized indirect benefits to him, *Burnet* v. *Wells*, 289 U. S. 670, should be treated as an expenditure made for his own account. *Cornet* v. *Cornet, supra*. Any claim that he should escape taxation because he was enabled to obtain that benefit through his own wrongdoing and with income not rightfully his would be given short shrift. *National City Bank of New York, Executor*, 35 B. T. A. 975; affd., 98 Fed. (2d) 93 (C. C. A., 2d Cir.). And whether he would be entitled to a deduction if and when he made good to the trust for the misappropriated funds would be a question outside the present record.

Petitioner challenges the constitutionality of section 167 (a) (3) as applied to the present facts. He urges that by taxing the income of the respective trusts to petitioner, respondent is measuring petitioner's income tax liability by the income of another and placing a burden on petitioner unrelated to his privileges or benefits. Consideration of that question is foreclosed by *Henry A. B. Dunning*, 36 B. T. A. 1222.

However, respondent endeavors to charge petitioner with the entire income of the several trusts. In the recent case of *Genevieve F. Moore*, 39 B. T. A. 808, respondent urged the taxability of the entire trust income where authority to invest in life insurance contracts was given by the trust instrument, although it did not appear that any policies existed in the tax year. We there said:

While on its face section 167 might appear to apply, it has, so far as can be discovered, never been considered applicable even by the respondent as broadly as is now suggested. * * *

\* \* \* application of the provision in question depends upon the existence in the tax year of policies upon which it would have been physically possible for the trustees to pay premiums and upon the amount of the premiums so payable.

The taxability of the trust income to petitioner is thus limited to premiums paid or payable on existing policies. As to the trust income above the premiums actually paid, we hold for petitioner.

The remaining question involves a loss claimed by petitioner on the sale in 1934 of stock held by him in the Reorganization Investment Co. The sole issue is whether the stock sold by petitioner in 1934 was worthless in a prior year. It has become a postulate that a loss deduction can not be taken in a subsequent year, if the stock was actually worthless in a prior year. *Claude D. Cass*, 32 B. T. A. 713; affd., 83 Fed. (2d) 841; *Walter W. Moyer*, 35 B. T. A. 1155. A taxpayer can not thus defer losses to his convenience.

Respondent has found that the stock in question was actually worthless in 1933. In that year petitioner had also sold some of the stock in this company at the nominal sum of $4 for 500 shares, or four-fifths of a cent a share, for shares which had cost him $1,000 each. In the taxable year petitioner received the net sum of 22 cents for 12 shares of this stock which had cost him $12,000.

To sustain his burden of proving some value in 1933, petitioner introduced the balance sheets of the Reorganization Investment Co. as of December 31, 1933, upon which the assets are given a substantial value. It may be that the assets of a corporation are properly to be considered in arriving at the value of its stock (*Lillian G. McEwan*, 26 B. T. A. 726), and it may even be that in the absence of any other showing the book value of those assets may be some evidence of their actual value, and may sufficiently shift the burden of going forward to the respondent. *B. F. Edwards*, 39 B. T. A. 735; see *Wessell* v. *United States*, 49 Fed. (2d) 137; *Commissioner* v. *Brier Hill Collieries*, 50 Fed. (2d) 777. In this proceeding, however, the book figures are shown to have no bearing whatever on the actual value of this stock, by the fact that petitioner disposed of 500 shares of this stock in the year prior to the taxable year for the nominal sum of $4. A sale of stock at a nominal price may not of itself establish worthlessness or the existence of value. *Claude D. Cass, supra; De Loss* v. *Commissioner*, 28 Fed. (2d) 803. However, if bona fide, it must establish that the stock is worth no more than the sale price. *Rhodes* v. *Commissioner*, 100 Fed. (2d) 966. Hence, in the present case the book figures are shown to bear no relation to the actual worth of the stock. Thus, we are left with no evidence of any probative force that it had value prior to 1934. It follows that petitioner has failed to sustain his burden of proof. *Claude D. Cass, supra; Sterling Morton*, 38 B. T. A. 1270.

Petitioner urges that at all times the Reorganization Investment Co. continued in the operation of its business and was at all times able to pay its current obligations as they matured. The continued operation of the company does not of itself prove value in its stock. *Claude D. Cass, supra; Floyd E. Poston et al., Administrators,* 17 B. T. A. 921. Moreover, the company by its very nature was a liquidating company, and would presumably continue to operate until its purpose was fulfilled, even though the final result of its operations could leave nothing for stockholders.

Nor does the sale in 1934, if the stock was already worthless, aid the petitioner. *De Loss* v. *Commissioner, supra.* This is especially true where, as appears from this record, the purchaser was actuated solely by "speculative" motives. *Gilbert H. Pearsall,* 10 B. T. A. 467.

Since petitioner has not established value for the stock in 1934, the balance sheet showing of value in assets being discredited by the terms of the sale in the prior year, and the continued operation of the company not being indicative of any value, we have found the stock to have been worthless prior to 1934, as determined by respondent.

*Decision will be entered under Rule 50.*