ROOSEVELT INVESTMENT CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FIRST REALTY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 101453, 101558.   Promulgated October 24, 1941.

*Edward L. Rosling, Esq., Harold L. Scott, C. P. A., Charles T. Donworth, Esq.,* and *Pearce C. Davis, C. P. A.,* for the petitioners.
*B. H. Neblett, Esq.,* for the respondent.

444

446

450

OPINION.

HILL: The first issue is whether the basis to Roosevelt Investment for purposes of depreciation is the adjusted cost basis of the corporations which transferred their properties to Roosevelt Investment or the actual cost to the transferee. Petitioner Roosevelt Investment contends that the properties were transferred to it solely in exchange for stock and that the transaction in which it acquired the properties was either a tax-free exchange under section 112 (b) (5) of the Revenue Act of 1934 or a statutory reorganization under section 112 (g) (1) (C) of the Revenue Act of 1934. It maintains that, since the properties were acquired pursuant to a reorganization within the meaning of section 112 (g) (1) (C), the basis remains the same as in the hands of the transferors. Respondent argues that the securities received from Roosevelt Investment by the transferors were not "substantially in proportion" to the transferors' interests in the property prior to the exchange and contends that such disproportion disqualifies Roosevelt Investment from the benefits of section 112 (b) (5). He contends that the continuity of interest necessary for the application of section 112 (g) (1) (C) was not present, so that section 113 (a) (7) is not applicable.

We first inquire whether petitioner Roosevelt Investment acquired the hotel property in the course of a reorganization as defined by section 112 (g) (1) (C) of the Revenue Act of 1934.[1] In order to qualify under this section there must be a continuity of interest in the transferors. *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *Le Tulle* v. *Scofield*, 308 U. S. 415. Immediately after the transfer the transferors or their shareholders must be in control of the transferee. Control within the meaning of the reoganization provisions is defined by section 112 (h) of the Revenue Act of 1934 as the ownership of at least 80 percent of the voting stock and 80 percent of all other classes of stock of the corporation.

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

(1) The term "reorganization" means \* \* \* (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, \* \* \*

In the instant case Realty Investment transferred a lease valued at $25,000 and $25,000 in cash to petitioner Roosevelt Investment in exchange for 50 percent of all of Roosevelt Investment's common voting stock. No stock other than common was issued by the new corporation. First Realty subscribed in behalf of First Hotel for 25 percent of the new corporation's shares, paying $25,000 cash therefor and causing First Hotel to transfer its interest in the hotel property to the new corporation. Maltby-Thurston subscribed for the remaining 25 percent of the new corporation's stock, paying $25,000 cash and causing the operating company to transfer its interest in the hotel property to the new corporation. Immediately after the transfer the control of the new corporation was in the hands of the transferors. Realty Investment then owned 50 percent of Roosevelt Investment's entire capital stock, First Hotel or its sole shareholder, First Realty, owned 25 percent, and Maltby-Thurston and the other stockholders of the operating company owned 25 percent of the shares of Roosevelt Investment. Realty Investment, First Hotel, and the operating company were the transferor corporations and they or their stockholders were in control of the new corporation by virtue of ownership by them or their shareholders of 100 percent of all shares, voting and otherwise, of Roosevelt Investment.

We have found as a fact that Edris subscribed for stock of the new corporation in behalf of Realty Investment and the cash thus paid must be deemed to be that of Realty Investment. Respondent has argued at length regarding alleged disproportion of interests transferred to Roosevelt Investment to value of stock received. It is sufficient answer to this argument for purposes of discussion here that the proportionate interest required under section 112 (b) (5) is not required for a statutory reorganization under section 112 (g) (1) (C). The transfer under consideration was pursuant to a reorganization, and, by virtue of coming within the terms of section 112 (g) (1) (C), Roosevelt Investment's basis for purpose of computing depreciation is that of its transferors, increased by the gain or decreased by the loss recognized to the transferors upon the transfer. Sec. 113 (a) (7).[2]

---

[2] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\*     \*     \*     \*     \*     \*     \*

(7) TRANSFER TO CORPORATION WHERE CONTROL OF PROPERTY REMAINS IN SAME PERSONS.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 50 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.

No gain or loss was recognized on the transfer of the various properties to the new corporation in exchange for the new corporation's stock. Sec. 112 (b) (4), Revenue Act of 1934. Although a liability of the operating company and a portion of the mortgage indebtedness of First Hotel and First Realty were assumed by Roosevelt Investment, such assumption is not to be considered as "other property or money" received by the taxpayer within the meaning of section 112 (c), (d), or (e) of the Revenue Act of 1934 and does not prevent the exchange from being within the provisions of section 112 (b) (4) of the Revenue Act of 1934. Sec. 213 (f) (1) and (2), Revenue Act of 1939.

Respondent next contends that, even though the transfer was in the course of a reorganization, the basis in the hands of Roosevelt Investment must be reduced in the amount of indebtedness of which the transferors were relieved at the time of the transfer. We see no reasonable ground for this contention. Respondent has cited no authority in behalf of his argument and given no valid reason for the adjustment of the basis in the manner which he suggests. The statutory provisions for adjustment of basis will be found only in section 113 (b) of the Revenue Act of 1934 and, after giving effect to gain or loss recognized on the transfer, no adjustment to basis other than as authorized by section 113 (b) may be made. While section 113 (a) (6) of the Internal Revenue Code, relating to basis of tax-free exchanges in general, has been amended by section 213 (d) of the Revenue Act of 1939, so that for all taxable years beginning after December 31, 1938, assumption or taking subject to liabilities will affect the basis in the hands of the transferee, that section can not be applied retroactively. Moreover, section 113 (a) (6) is specifically not applicable when the transferee corporation acquires property by issuance of its securities. Accordingly, we hold for petitioner on this issue. Upon our disposition of the issue we need not consider petitioner's argument that the transfer was in the course of a tax-free exchange under section 112 (b) (5) of the Revenue Act of 1934.

The second issue, which involves the rate of depreciation on the hotel building, must be decided for respondent. Petitioner has failed to give convincing proof that respondent erred in determining that the proper rate of depreciation is 2 percent. Respondent's determination of a 2 percent depreciation rate is supported by the fact that Roosevelt Investment deducted depreciation on the hotel building on its 1935 and 1936 returns and carried a reserve for depreciation on the hotel on its books at that rate. Testimony adduced at the hearing did not demonstrate that the 2 percent rate of depreciation was unreasonable nor that the proper rate should be other than 2 percent.

The third issue is whether or not respondent erred in determining the proportion of the dividend from Roosevelt Investment received by First Realty which was attributable to earnings and profits. Petitioner First Realty contends that a large proportion of the dividend represents return of capital, which consequently is not taxable to the recipient. The disposition of this question is directly dependent upon our determination of the first and second issues. We have held that the basis of Roosevelt Investment was that of its transferors and have upheld respondent's determination of rate. The amount of dividend paid by Roosevelt Investment which was attributable to earnings and profits will be determined upon recomputation under Rule 50.

The fourth issue is whether or not First Realty is entitled to a bad debt deduction for the year 1936 for the amount of its investment in debentures of Community. Petitioner First Realty contends that its board of directors directed a revaluation of the assets of the corporation, which resulted in the ascertainment that the debentures were worthless. Petitioner contends further that the debentures were ascertained to be worthless and charged off in the taxable year. Respondent claims that there was no true ascertainment of worthlessness and that nothing constituting a charge-off occurred in the taxable year. He stresses the fact that the alleged bad debt was not claimed as a deduction on the return.

We are of the opinion that petitioner First Realty properly ascertained the debentures to be worthless and charged them off in the taxable year. The fact that they might have been worthless before that year will not necessarily deny the deduction. *Commissioner* v. *MacDonald Engineering Co.*, 102 Fed. (2d) 942. The test is that of a reasonable man having a knowledge of the facts available to the taxpayer. *Avery* v. *Commissioner*, 22 Fed. (2d) 6.

In the taxable year certain officers of First Realty experienced in real estate matters made independent valuations of the assets of the corporation. Each of these officers valued the debentures and stock of Community at nominal value. The new valuations were adopted by the board of directors and shareholders of First Realty during the taxable year and the debentures and stock of Community were reduced on the books of the corporation as of December 31, 1936, to a nominal value of $1. The revaluation of the assets amounted to an ascertainment of worthlessness and the reduction on the books amounted to a charge-off under the statute. See *Commissioner* v. *MacDonald Engineering Co.*, *supra*, at p. 945.

The fact that the deduction was not claimed in the First Realty return is not material since the return showed a net loss. Nor is the fact that the debentures were later exchanged for worthless securities pursuant to the reorganization important. *Coon Valley State Bank*,

13 B. T. A. 132. We hold that respondent erred in disallowing First Realty's claimed bad debt deduction in the sum of $12,510 representing its investment in debentures of Community.

The final issue is whether or not petitioner First Realty may deduct the sum of $25,000 representing its investment in common stock of Community. Petitioner claims that a number of identifiable events, such as the trustee's ultimatum to Community to reorganize and the suit by Deibler to cancel the lease on property on which the hotel kitchen is situated, show that the stock actually became worthless in the taxable year. Respondent argues that there has been no proof that the stock became worthless in the taxable year and contends that during the year the stock actually increased in value due to the reorganization plan.

We are of the opinion that the petitioner has failed to prove an essential fact necessary for a finding by us that the stock became worthless in the taxable year, namely, that the stock had value at the *beginning* of the taxable year. *Frank C. Rand*, 40 B. T. A. 233. Unless the stock had value at some time in the taxable year there could be no loss sustained due to the stock *becoming* worthless in that year. For failure of petitioner First Realty to sustain the burden of proof in this matter we uphold respondent on this issue.

*Decision will be entered under Rule 50.*