Summit Drilling Corporation v. Commissioner.
Summit Drilling Corp. v. Commissioner
Docket No. 6912.
United States Tax Court
1946 Tax Ct. Memo LEXIS 237; 5 T.C.M. (CCH) 190; T.C.M. (RIA) 46065; March 20, 1946
*237 John M. Winters, Jr., Esq., and Roger S. Randolph, Esq., 318 First National Bank Bldg., Tulsa, Okla., for the petitioner. E. G. Sievers, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: The Commissioner determined a deficiency in income tax of $13,536.25 for the fiscal year ended September 30, 1941. The deficiency is the result of various adjustments made by the Commissioner, only one of which is in controversy, viz., the disallowance of a loss deduction of $87,000 which petitioner claims it sustained on account of certain shares of stock becoming worthless in the taxable year. Findings of Fact The petitioner, organized in October 1937 as a Delaware corporation, is authorized to transact business in Oklahoma. Its principal office is at Tulsa. It filed its Federal income tax return for the fiscal year ended September 30, 1941, in the district of Oklahoma. In October 1937 in exchange for its own shares the petitioner acquired all the assets and assumed all the liabilities of Summit Drilling Company, an Oklahoma corporation, which assets included 1,100 shares of stock of Exchange National Bank, of Tulsa, Oklahoma, hereinafter referred to as Exchange *238 Bank. The cost basis of such shares to petitioner is $87,000. Petitioner never sold or disposed of such shares. In its return for the fiscal year ended September 30, 1941, it claimed a loss deduction of $87,000 on the ground that the shares of Exchange Bank became worthless in that year. The deduction was disallowed by the Commissioner. Each shareholder of Exchange Bank, as appeared from a printed trust agreement endorsement on the back of each stock certificate, was beneficially interested in common with all other shareholders of the bank in a pro rata amount of the capital stock and surplus of Exchange Trust Company under a certain agreement dated April 30, 1918, which interest was transferable only by transfer of Exchange Bank shares. No stock certificates evidencing such beneficial interest in Exchange Trust Company were ever issued to any shareholder or Exchange Bank. The Exchange Trust Company went out of business in 1933. Of the $87,000 invested by petitioner, 68 per cent thereof represents its cost basis of its interest in Exchange Bank and 32 per cent thereof represents its cost basis of its interest in Exchange Trust Company. Exchange Bank was a national bank organized in *239 1910. It was closed for a period of approximately two weeks during 1933, the first few days of this period having been a bank holiday declared by Oklahoma and the remainder of the period having been a National bank holiday declared effective March 6, 1933, and ending March 14, 1933, if and when permission to reopen was obtained from Federal banking authorities. Exchange Bank obtained this permission, reopened March 14, 1933, and continued to conduct its usual banking business without any limitations upon its activities up to and including April 24, 1933, after which date it never operated as a banking institution again. The National Bank of Tulsa, Oklahoma (hereinafter referred to as Tulsa Bank) was organized under the national banking laws on or about April 23, 1933, for the express purpose of taking over the business of Exchange Bank on April 24, 1933. It purchased certain assets, including the Exchange Bank Building, of the book value of $8,590,117.52, and assumed all of the liabilities of Exchange Bank, aggregating $28,030,790.59 exclusive of its liability of stockholders on account of capital. In consideration of the assumption of such liabilities, Exchange Bank, in accordance *240 with the agreement of sale, gave the Tulsa Bank two promissory notes, Note No. 1 being for $6,241,812.31 and Note No. 2 for $13,198,860.76, or the total principal sum of $19,440,673.07. Each note matured in two years and each bore interest at the rate of 5 per cent per annum. Each note was subsequently extended for two-year periods from time to time. Interest payments were kept current and at no time was either note permitted to become past due. As collateral security for the notes Exchange Bank pledged its total remaining assets having an aggregate book value of $22,128,478.46. In addition there were also pledged assets having a book value of about $3,400,000, which had been charged off on the books of Exchange Bank prior to April 24, 1933. Immediately after the completion of the transaction, all of the assets of Exchange Bank were pledged to secure the payment of the two notes payable to the Tulsa Bank. Exchange Bank had no other liabilities. The organization of the Tulsa Bank to take over the business of the Exchange Bank and all matters pertaining to the same were approved by the Federal banking authorities having jurisdiction thereof. Tulsa Bank commenced business on April 25, *241 1933, in the same banking rooms and with the same personnel as formerly were used and employed by Exchange Bank. Exchange Bank placed the liquidation of its pledged assets in the control of a special liquidating committee. Tulsa Bank handled the detailed execution of the decisions of such liquidating committee, reserving only the right of approval of its own executive committee as to the liquidating transactions. This procedure was adopted to assure each bank that it would receive the maximum realizable values from the collateral securing the promissory notes of Exchange Bank. All collections from the assets were applied, (1) to expenses chargeable against liquidation transactions, (2) to interest on the notes of Exchange Bank to Tulsa Bank, and (3) to payment of principal of such notes. Books reflecting the liquidation of the pledged assets were kept by employees of Tulsa Bank for the liquidating committee. All the transactions during the period from April 25, 1933, to February 17, 1941, and the results thereof as shown by such books of account are summarized as follows: Book value of pledged assets as of April 25, 1933
$22,128,478.46
Plus: Earnings from Apr. 25, 1933 to Feb. 17, 1941, including recoveries of
$581,713.12 on assets of approximately $3,400,000 charged off prior
to Apr. 24, 1933
2,729,275.4
Total
$24,857,753.89
Less: Loss on realization
$ 2,071,192.77
Expenses
$2,095,523.75
Less charges to expenses set up in
Reserves
9,554.62
2,085,969.13
Paid on principal of notes to Tulsa Bank
18,778,562.34
22,935,724.24
Book value of unliquidated assets as of Feb. 17, 1941
$ 1,922,029.65
Outstanding liabilities: Balance unpaid on Note No. 2 (Note No. 1 paid
in full)
$ 662,110.73
Valuation Reserve
201,732.44
863,843.17
Book value of assets in excess of liabilities as of Feb. 17, 1941
$1,058,186.48
The *242 book value of the unliquidated assets and the liabilities as of December 31, 1940, and February 17, 1941, were as follows: Dec.
Feb.
Assets:
31, 1940
17, 1941
Overdraft
$ 63.81
$ 63.81
Personal Loans
200.00
200.00
Loans and Discounts
564,854.65
560,398.04
Loans pledged Note #1
127.86
127.86
Other Bonds
24,980.33
24,980.33
Securities, a/c #1
7,751.00
7,751.00
Judgments
230,377.68
230,146.62
Special Imp. Bonds
684,768.60
663,513.96
Securities, a/c #2
77,086.28
77,086.28
Other Real Estate
105,239.32
70,235.55
Tax Resale Properties
34,402.33
34,258.46
Oil Assignments
10,000.00
10,000.00
Equity-Wirt Franklin
Assets
243,267.74
243,267.74
Due from State Banks
16,455.04
$1,999,565.64
$1,922,029.65
Liabilities: Note No. 2
683,053.63
662,110.73
Valuation Reserve, Spl.
Imp.-Inc. Coll.
201,732.44
201,732.44
Book value of assets in
excess of liabilities
$1,114,779.57
$1,058,186.48
Under date of February 17, 1941, Exchange Bank and Tulsa Bank entered into a written agreement whereby Exchange Bank transferred to Tulsa Bank all of its assets, which the latter accepted in full discharge of Note No. 2, Note No. 1 having theretofore been fully paid. This agreement did not affect or impair the obligation of Tulsa Bank contained in the agreement of April 25, 1933, *243 to pay the then existing liabilities of Exchange Bank which it had assumed to pay. The unliquidated assets were taken over by Tulsa Bank and set up on its books. Subsequently and up to September 30, 1945, Tulsa Bank realized $620,942.07 from the assets taken over, which left a balance unpaid on Note No. 2 of $41,168.66 as of September 30, 1945. The assets remaining as of that date were carried by Tulsa Bank on its books at a value of $111,487.58. Beginning on August 31, 1933, a national bank examiner made the first regular examination of Tulsa Bank. This included an examination and appraisal of the unliquidated assets of Exchange Bank pledged as collateral to the two notes in favor of Tulsa Bank. Such assets as of August 31, 1933, were as follows: Bonds, Securities, etc.
$ 6,465,823.52
Loans & Discounts
10,823,520.25
Real Estate
173,784.63
Cashier's Check issued by Tulsa
Bank
50,000.00
Chattel Account-Gasoline Plant &
Equipment
8,000.00
Overdrafts
1,297.47
Cash on Deposit, Tulsa Bank
284,516.75
Total
$17,806.942.62 After a detailed examination, the bank examiner classified the above assets as follows: Good
Doubtful
Worthless
Bonds, Securities, etc., plus appreciation on items
charged off of $16,127.35
$ 3,867,967.45
$ 680,926.00
$1,933,057.42
Loans & Discounts, plus appreciation on items
charged off of $66,885.80
6,938,134.63
1,211,745.43
2,740,525.99
Real estate
104,192.66
31,500.00
38,091.97
Cashier's checks
50,000.00
Chattel Account
1,000.00
7,000.00
$10,960,294.74
$1,925,171.43
$4,718,675.38
*244 Under date of March 24, 1934, the deputy comptroller sent a telegram to Tulsa Bank with reference to the above appraisal as follows: Classifications last report on building previously withdrawn Stop On recommendation chief examiner loss classification on liquidating notes old bank now set aside. The loss classification was set aside to permit a graduated elimination of such loss over a period of years as a protection to Tulsa Bank. Many of the loans carried by Exchange Bank were connected with or related to the oil business. During April to the end of August 1933 a depressed condition prevailed in the oil business and business generally. In East Texas oil was 10 cents per barrel on April 25; on May 11, 25 cents. In Oklahoma and Kansas the May 1933 posted market price was 25 cents a barrel at wells for all grades of crude oil. Subsequently conditions in the oil business improved and the posted market prices in September and December 1933 ranged from 79 cents a barrel for crude oil below 29degree gravity to $1.08 for crude oil 40degree gravity and above. From time to time subsequent to April 24, 1933, the liquidating committee made appraisals of the assets of the Exchange Bank. Its *245 appraised value of the unliquidated assets as of December 31, 1940, after giving effect to the collections made on the assets from January 1 to February 17, 1941, inclusive, was $550,648.29. Between April 24, 1933, and February 17, 1941, Tulsa Bank charged off or wrote down Notes No. 1 and No. 2 to the extent of $1,383,233.09. The 1,100 shares of Exchange Bank were worthless prior to October 1, 1940. Opinion The Commissioner disallowed loss deduction of $87,000 claimed by petitioner on its income tax return for the fiscal year ended September 30, 1941, on account of 1,100 shares of stock of the Exchange Bank becoming worthless in that year for the reason * * * that it has been determined that said stock became worthless in the year 1933 and not in the year 1941 and for the further reason that you have not submitted evidence showing the gain or loss basis of said stock to you. On brief the respondent concedes that the petitioner presented ample evidence in support of its investment of $87,000 in the 1,100 shares. The only question for our consideration, therefore, is whether such shares became worthless during the fiscal year ended September 30, 1941. All the assets which the Exchange *246 Bank owned after the transfer of assets of $8,590,117.52 on April 24, 1933, were held as collateral to secure the payment of its two notes in favor of Tulsa Bank. Nothing remained for distribution to its shareholders. Distribution, if any, depended upon whether in the course or upon the completion of liquidation an amount in excess of Exchange Bank's liability to Tulsa Bank and expenses of liquidation was realized from the assets held as collateral. The value of these assets, therefore, are "a material issue, as excess of liabilities over assets, properly valued, is fundamentally what establishes worthlessness of stock." Foster v. Commissioner, 112 Fed. (2d) 109 (C.C.A.-1). The taxable year involved began on October 1, 1940. To prevail, it is incumbent upon the petitioner to show that the pledged assets had a value in excess of liabilities on that date. Roosevelt Investment Corporation, et al., 45 B.T.A. 440, 456; Frank C. Rand, 40 B.T.A. 233; affd., 116 Fed. (2d) 929 (C.C.A.-8); certiorari denied, 313 U.S. 594; rehearing denied, 314 U.S. 706. It has been held that assets of a corporation are properly to be considered in arriving at the value of its stock, and that "it may even *247 be that in the absence of any other showing the book value of those assets may be some evidence of their actual value, and may sufficiently shift the burden of going forward to the respondent." [Italics supplied.] Frank C. Rand, supra, B. F. Edwards, 39 B.T.A. 735. It is true that after more than seven years of liquidation, and on December 31, 1940, and on February 17, 1941, the book value of the unliquidated assets was $1,114,779.57 and $1,058,186.48, respectively, in excess of liabilities. This, however, is not sufficient to establish that the Exchange Bank stock had any value as of October 1, 1940. There is other evidence which does not permit a finding that the stock in question had any value as of the beginning of the taxable year. The appraisal made by the Federal bank examiner in August-September 1933 is vigorously attacked by petitioner on the grounds that it was set aside by the Comptroller of the Currency and that the values therein were based upon depressed values due to unusually bad conditions in business generally and particularly the oil business and for other reasons. The appraisal by the bank examiner and his opinion is, of course, only one of the circumstances to *248 be considered here; further, the price of oil had greatly improved by September 1933, about the time when the examination was concluded, so his opinion, which was as of August 31, 1933, rested on conditions existing not at the lowest price of oil, but when the price had again improved. In Markham, Executrix, v. Jones (D.C.Okla., June 4, 1945), a loss deduction had been claimed in 1934 on account of shares of Exchange Bank having become worthless in that year, which deduction was disallowed by the Commissioner on the ground that the shares became worthless in 1933. In that case, Donohue also testified. The District Court found, among other things, and concluded that: * * * the fair valuation of its assets as of August 1933 [referring to the valuation of Donohue] showing them to be substantially less that its liabilities on that day or prior thereto, and the amount of the recovery upon liquidation through the subsequent years, [n1] establish that the loss to the Markham Estate upon the stock of the Exchange National Bank occurred in the year 1933, and not in the year 1934. * * * * *
[Footnote] * * * Nor does the telegram of the Deputy Comptroller, of March 24th, stating that the "loss *249 classification on liquidation notes of the old bank now set aside" weaken the testimony of Donohue, the bank examiner. It was consistent with good administration to set aside the loss classification so as not to affect the new bank or its prospects of continuing as an active and strong banking institution, and to allow the loss to be spread over a period of years; but it does not follow that the Exchange National Bank was solvent, or that its stock was of any value in August of 1933. It may be pointed out also that although the rise in the price of oil from 25 cents a barrel in May to $1 a barrel in the latter part of 1933 may have given the pledged assets, and in particular the item of loans and discounts, an increased potential value, as argued by petitioner, the increase in price and improved business conditions did not bring about a realization of the book value of the assets. The liquidating committee from time to time made appraisals of the unliquidated assets, but the results of only one, viz., the one as of December 31, 1940, is in evidence. The appraisal value as found by such committee as of that date, after giving effect to the collections made from January 1 to February *250 17, 1941, was $550,648.29, which was $111,462.44 less than the balance due on Note No. 2 on February 17, 1941. The petitioner argues that such appraisal of the liquidating committee was inadmissible in evidence because not presented by the person who prepared it. The amount of the appraisal was given upon cross-examination by the head of the auditing department of Tulsa Bank since 1940, who prior thereto and since 1929 was employed in the auditing department of the Exchange Bank and Tulsa Bank. He was responsible for the preparation of all reports made by the liquidating committee from time to time showing the progress of the liquidation and he was familiar with such appraisal. In our opinion, it is reasonable to believe that the unliquidated assets on October 1, 1940, had no substantially greater value than the balance due on Note 2 on that date. See Hobby v. Commissioner, 97 Fed. (2d) 731 (C.C. A.-5). That such belief is reasonable is supported not only by the above appraisals, but also by the fact that the unliquidated assets were transferred a few months after the beginning of the taxable year in discharge of the liability of Exchange Bank on its Note No. 2 of $662,110.73 and *251 the further fact that during a period of more than four years Tulsa Bank realized on such assets only $620,942.07, leaving a balance of $41,168.66 still unpaid on Note No. 2 as of September 30, 1945. In so far as disclosed by the record, no protest was made by any stockholder of Exchange Bank that the value of the unliquidated assets transferred to Tulsa Bank was in excess of the balance due on Note No. 2. W. H. Donohue, the national bank examiner who made the examination in 1933, testified that in his opinion the Exchange Bank was insolvent and its stock worthless as of August 31, 1933. Petitioner argues that the Exchange Bank could not have been insolvent since, under the Oklahoma law, a debtor is insolvent only "when he is unable to pay his debts from his own means as they become due." (24 Okla. St. Anno. Sec. 32) and that the officers of Tulsa Bank had to believe that the pledged assets of Exchange Bank exceeded its liabilities or the due date of the notes would not have been extended for two-year periods. There is little merit to such argument, for obviously Exchange Bank was unable to pay its notes to Tulsa Bank when they became due and extension of time of payment was required *252 to permit orderly liquidation of its assets so that the liquidation committee would realize and Tulsa Bank in turn receive an amount greater from such assets than could be obtainable in a forced sale. Obviously, too, inability or anticipated inability to meet its obligations as they became due caused Exchange Bank to cease to operate and liquidate its assets. However, it is not necessary to determine whether Exchange Bank was insolvent and its stock worthless in 1933. Unless the stock is shown to have had value on October 1, 1940, irrespective of whether or not it had value in 1933, petitioner can not prevail. The testimony of a vice president of Exchange Bank and later of Tulsa Bank that in his opinion there was reasonable hope throughout the period from April 24, 1933, to February 17, 1941, that the liquidation of the assets might leave something after the payment of the notes for the stockholders of Exchange Bank and that throughout such period there was always a potential value in such stock depending upon the results of liquidation is of little weight, particularly so in view of the fact that Tulsa Bank during the liquidation period charged off on its books the liability of Exchange *253 Bank on its notes to the extent of $1,383,233.09, an indication that the officers of Tulsa Bank were of the opinion that sufficient to pay such notes would not be ralized from the pledged assets. Nor are the annual reports of the liquidating committee determinative for, except for cash items, they reflect only the book value of the assets, which as shown by the results of the liquidation was in excess of actual value. Upon all the evidence it is our opinion that the petitioner has failed to show that the stock of Exchange Bank was not worthless prior to October 1, 1940, and became worthless in the taxable year ended September 30, 1941. Decision will be entered for the respondent