Wilbert Garrison v. Commissioner.
Garrison v. Commissioner
Docket No. 9155.
United States Tax Court
1947 Tax Ct. Memo LEXIS 336; 6 T.C.M. (CCH) 17; T.C.M. (RIA) 47002; January 16, 1947
*336 [Deductions: Losses: Sale of worthless stock.] Petitioner is not entitled to a claimed capital loss in 1941 of $13,322.50 or for any lesser amount on account of an alleged sale for $5.00 of 400 shares of stock in the Independence Indemnity Company which he had acquired many years prior to the date of sale. The corporation had been declared insolvent in 1932 and all of its assets transferred in that year to another corporation which had agreed to reinsure its liabilities. In 1933 the Independence Indemnity Company had been dissolved under the laws of the State of Pennsylvania and its affairs placed in the hands of the Insurance Department of that state for liquidation. Petitioner's shares of stock in the corporation had become worthless in some year prior to 1941 and he cannot establish a tax loss in that year by an alleged sale for $5.00 which cost him $52 to effect. Said sale was only a gesture and is not effective for tax purposes. Wilbert Garrison, pro se. R. O. Carlsen, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the year 1941 of $583.63, resulting from adjustments made to net income as disclosed by petitioner's return, which adjustments were as follows: Unallowable deductions and additional income: (a) Capital loss
$13,322.50
(b) Selling expenses
52.00
(c) Dividends
110.41
These adjustments were explained in a statement attached to the deficiency notice as follows: (a) It is held that the stock of Independence Indemnity Company became worthless prior to 1941. When stock has become worthless in a prior year, a sale in a later year for a nominal amount does not give rise to a deductible loss. * * *
(b) It is held that the expenses of $52.00 claimed on line 16 of your return in connection with the aforementioned sale are not deductible separately under any of the provisions of section 23 of the Internal Revenue Code *338 as amended. (c) [This is explained as an adjustment of dividends received. It is not copied here because petitioner does not contest that adjustment.] Petitioner assigned error as to adjustments (a) and (b) as follows: A. Petitioner assigns as error the respondent's decision "that the stock of Independence Indemnity Company became worthless prior to 1941." B. Petitioner assigns as error respondent's disallowance of petitioner's claim for loss on account of sale of Independence Indemnity Company stock. Findings of Fact At the hearing the parties filed a stipulation of facts which reads in part as follows: 1. Petitioner is an individual engaged in the printing business with his principal place of business at 30 Ferry Street, New York, New York. 2. Petitioner filed an income tax return for the calendar year 1941 with the Collector of Internal Revenue for the Second Collection District of New York. Under item 7 (c) of said return for 1941, petitioner claimed a deduction of $13,322.50, representing 50% of an alleged capital loss sustained from the sale of certain Independence Indemnity Company stock, explained as follows: Acquired
Sold
Selling Price
Cost
Loss
Taken into Account
1932
12/30/41
$5.00
$26,650
$26,645
$13,322.50
*339 Said return further indicated a total net loss for the year 1941 of $7,937.06. 3. On December 30, 1941 after advertisement of sale at The Exchange Salesrooms, 20 Vesey Street, Borough of Manhattan, New York City, petitioner sold at auction 400 shares of said stock for $5.00. Petitioner claimed as deductible expenses in connection with said sale the sum of $52.00, itemized as follows: U.S. Revenue Stamps
$ 1.00
State Revenue Stamps
12.00
Advertising & catalogue
2.00
Salesman's fees
2.00
Commission 1/4%
35.00
$52.00
* * *
5. Taxpayer acquired 2,800 shares of Independence Indemnity stock at a cost of $77,600 purchased as follows: Date Acquired
Shares
Cost
Nov. 1922
50 (later replaced by 10 for 1)
$15,000
June 1923
50 (later replaced by 10 for 1)
15,000
Dec. 1924
50 (later replaced by 10 for 1)
15,000
Sept. 1928
500
15,000
800
17,600
2800
$77,600 On the basis of the above total cost, the average cost per share was $27.71. * * *
7. Independence Indemnity Company was incorporated under the laws of the State of Pennsylvania on Oct. 31, 1922. On September 21, 1931, a new company was organized *340 by the same name, resulting from the merger of the old company, the Commonwealth Casualty Company, the American Mine Owners Casualty Company, and the Liberty Surety Bond Insurance Company. The new Independence Indemnity Company was domiciled in Philadelphia, Pennsylvania, and commenced business on October 1, 1931. 8. From the outset, the Independence Indemnity Company was in financial difficulties. By a Treaty of Re-insurance, effective September 30, 1932, the company was re-insured 100 per cent by the International Re-insurance Corporation, a corporation which was formed on May 18, 1931 and was incorporated under the laws of the State of Delaware. 9. By the above agreement, the International Re-insurance Corporation agreed to re-insure all the liabilities of Independence Indemnity Company which were outstanding at that time and thereafter to be contracted, until that Independence Indemnity Company was rehabilitated, in consideration for payment to the International Re-insurance Corporation of a premium equal to the entire assets of the Independence Indemnity Company, or such part thereof as might be necessary to liquidate its liabilities. 10. By a subsequent agreement entered *341 into between the two companies on October 31, 1932, the International Re-insurance Corporation took over all the assets and assumed the liabilities of the Independence Indemnity Company. The agreement provided that the International Re-insurance Corporation was to pay over to the Independence Indemnity Company the sum, if any, by which the proceeds of the assets exceeded the liabilities assumed, less expenses paid in discharge of such liabilities and such portion of the overhead expenses of the International Re-insurance Corporation as might be applicable thereto. At the date of this agreement the liabilities of the Independence Indemnity Company exceeded its assets by an amount approximating $5,000,000. 11. On April 19, 1933, the International Re-insurance Corporation was declared insolvent and receivers were appointed by the Chancery Court of the State of Delaware. By order of the Supreme Court, New York County, dated April 21, 1933, the Superintendent of Insurance of the State of New York was directed to take possession of and to conserve the property and assets in the State of New York of said International Re-insurance Corporation. Ancillary receivers were thereafter appointed *342 for the corporation's property and assets situated in Pennsylvania. 12. Following the appointment of receivers for the International Re-insurance Corporation, application was made in Pennsylvania by the Insurance Commissioner for an order to liquidate the business and affairs of the Independence Indemnity Company. By a decree of the Court of Common Pleas of Dauphin County, Pennsylvania, in a proceeding instituted by the Insurance Commissioner of the Commonwealth of Pennsylvania, being No. 96, Commonwealth Docket 1933, the Independence Indemnity Company was formally dissolved on May 11, 1933 as an insolvent insurance corporation, and on May 12, 1933 the Insurance Commissioner of the Commonwealth of Pennsylvania was appointed liquidator thereof. 13. On January 2, 1934, the Insurance Commissioner of Pennsylvania also instituted proceedings in the United States District Court for the Eastern District of Pennsylvania against the Ancillary Receivers of the International Re-insurance Corporation by which the Insurance Commissioner sought to obtain the return of the assets of the Independence Indemnity Company on the basis that the International Re-insurance Corporation was insolvent *343 at the time the agreement of October 31, 1932 was entered into. The decision of the Federal Court was in favor of the International Re-insurance Corporation. The Circuit Court of Appeals for the Third Circuit denied a rehearing on May 11, 1939. 14. On November 15, 1932, the Wilbert Garrison Company, a creditor of the Independence Indemnity Company, received the sum of $360 in full payment of certain printed merchandise previously sold to the Independence Indemnity Company. 15. On October 22, 1946, the Wilbert Garrison Company received notice from Arthur G. Logan and William D. Denney, Receivers of International Re-insurance Corporation, that its claim No. 4804 had been certified by an ancillary jurisdiction to the Court of Chancery of the State of Delaware for allowance as a general claim in the amount of $80, and that its claim No. 4803 had likewise been certified for allowance as a general claim in the amount of $1.45. 16. The liquidation proceedings involving the Independence Indemnity Company and the International Re-insurance Corporation have not been terminated up to the present time. On October 22, 1946, petitioner received a document addressed to all stockholders and *344 creditors of International Re-Insurance Corporation. It is signed by the receivers of International Re-Insurance Corporation. It does not purport to make any distribution whatever to the stockholders of Independence Indemnity Company. It is incorporated in these findings of fact by reference. On March 4, 1942, petitioner received a letter from the Liquidation Division, Insurance Department, Commonwealth of Pennsylvania, which, omitting formal parts, reads as follows: Your letter of December 30, 1941 addressed to James L. Baxter, Special Master, relative to the affairs of the Independence Indemnity Company was referred to this office by the Receivers of the International Re-Insurance Corporation with their letter of February 20, 1942. It is true that we are the custodians of the stock records of the Independence Indemnity Company, and since we have received your letter of December 30th we have been attempting to dig up for you the necessary information which you request. I had thought at first that we could locate this data quite easily for you but it has turned out to be a larger task than we first thought it would be, and as we do not have any funds in our possession belonging *345 to the Independence Indemnity Company with which to pay for the necessary work in digging out this information for you we have had to discontinue our efforts. Estates in our possession must be self-sustaining and we cannot use funds belonging to other estates to work on estates where there is no money. As you probably know, the assets of the Independence Indemnity Company were all turned over to the Receivers of the International Re-Insurance Corporation, and after quite extensive litigation in which we attempted to recover the assets of the Independence Indemnity Company, said litigation extending over a period of almost four years, the Court decided that the Insurance Commissioner was not entitled to have the assets of the Independence Indemnity Company turned over to him for the purpose of paying the Independence Indemnity claims. If you desire the accountant in your office, or bookkeeper, to review such stock records as we have of the Independence Indemnity Company, we will be glad to make available all such records, allowing him to make such copies as he desires or obtain photostat copies. It is, of course, understood that records will have to be reviewed at our office between *346 the hours of 9:00 and 5:00 from Monday to Friday. We have a photostat machine on the premises and if photostats are desired of any of the stock records the only charge made for operating the photostat machine will be for the actual materials used. We have found in the stock records indications that you owned a considerable number of shares of stock and undoubtedly if this is a proper claim under your income tax you would be entitled to a substantial credit. We regret that we could not make this information available to you but you still have ample time before March 15th to send someone over from New York to check books in our possession if you care to. The shares of stock which petitioner owned in the Independence Indemnity Company became worthless prior to the year 1941. Opinion BLACK, Judge: The Commissioner in his determination of the deficiency has definitely determined that the 400 shares which petitioner owned in Independence Indemnity Company and which were the subject of the alleged sale in 1941 had become worthless prior to the year 1941. It, of course, requires no citation of authorities to establish the proposition that this determination of the Commissioner is *347 presumed to be correct. In order for petitioner to overcome by evidence the presumptive correctness of the Commissioner's determination in this case, it is necessary for him to prove two things: (1) That the stock of Independence Indemnity Company had some value at the beginning of 1941. Roosevelt Investment Corporation, 45 B.T.A. 440; Frank C. Rand, 40 B.T.A. 233; Bartlett v. Commissioner, 114 Fed. (2d) 634. And (2) that it was actually sold during the taxable year in a bona fide sale. The Internal Revenue Code requires the loss of a taxpayer on worthless stock to be taken in the year when the stock became worthless. The taxpayer is not permitted to postpone the taking of his loss to a later year by the device of a sale. De Loss v. Commissioner, 28 Fed. (2d) 803, certiorari denied 279 U.S. 840; Schmidlapp v. Commissioner, 96 Fed. (2d) 680. Let us see whether the evidence embodied in the stipulation of facts and in the documentary evidence introduced by the petitioner at the hearing meets either of the foregoing requirements. First, has petitioner proved that the stock had any value at the beginning *348 of the year 1941? Clearly he has not done so. In 1932 the Independence Indemnity Company being in financial difficulties conveyed all of its assets to International Re-Insurance Corporation which corporation agreed to reinsure the Indemnity Company's liabilities at that time. In 1933 the International Re-Insurance Corporation was itself declared insolvent and thrown into the hands of a receiver. Following this, by a decree of the Court of Common Pleas of Dauphin County, Pennsylvania, the Independence Indemnity Company was dissolved on May 11, 1933 as an insolvent insurance corporation and on May 12, 1933 the Insurance Commissioner of the Commonwealth of Pennsylvania was appointed liquidator thereof. It seems reasonable to assume that from that date on the stock of Independence Indemnity Company had no value. Certainly petitioner has not proved that there were any assets in the hands of the Insurance Commissioner of Pennsylvania which gave the stock any value. Such evidence as there is in the record is to the contrary. For example, on December 30, 1941, petitioner sought information as to what the records of the company showed as to the number of shares of stock he owned in it at the *349 time it ceased to do business. The Liquidation Division of the Insurance Department of the Commonwealth of Pennsylvania replied to this letter of petitioner and informed him in substance that to give him the information which he desired would require considerable research and that there were no assets in hand belonging to the Independence Indemnity Company to pay for such research and that if petitioner secured the information which he sought, he would have to come down and do the searching of the records for himself. We quote a paragraph from that letter as follows: Estates in our possession must be self-sustaining and we cannot use funds belonging to other estates to work on estates where there is no money. As you probably know, the assets of the Independence Indemnity Company were all turned over to the Receivers of the International Re-Insurance Corporation, and after quite extensive litigation in which we attempted to recover the assets of the Independence Indemnity Company, said litigation extending over a period of almost four years, the Court decided that the Insurance Commissioner was not entitled to have the assets of the Independence Indemnity Company turned over to him *350 for the purpose of paying the Independence Indemnity claims. The stipulation of facts shows that in the litigation to which the Insurance Department of the State of Pennsylvania refers in the above letter, the decision of the Federal District Court was in favor of the International Re-Insurance Corporation and against the Insurance Department of Pennsylvania, and that the Circuit Court of Appeals for the Third Circuit affirmed this decision and that rehearing was denied May 11, 1939. Therefore, it seems clear that at the latest the stock of Independence Indemnity Company could have had no value after May 11, 1939. Petitioner seems to be of the view, as expressed in his memorandum brief and reply brief, that because of a document which he introduced at the hearing dated October 1946 which shows that the Receivers of International Re-Insurance Corporation were preparing to pay dividends on claims filed against that corporation, that he has made some showing that the stock of the Independence Indemnity Company had some value. There is absolutely nothing in this document which shows that any payments whatever are to be made to stockholders of Independence Indemnity Company. The document *351 from the Receivers of International Re-Insurance Corporation simply shows that certain dividends are to be paid to the creditors of that corporation, as will be shown by the following quotation from the letter: The Receivers, in and by the Report and Petition, now recommend that they be authorized to pay the preferred claims summarized above in full, and a first dividend of 7 1/2% on all claims allowed as general claims in accordance with their recommendations summarized above. * * * Therefore, having carefully examined the stipulation of facts and the documentary evidence which petitioner has introduced, we find absolutely nothing which shows that the stock of Independence Indemnity Company had any value on January 1, 1941. On the contrary, all the evidence in the record supports the Commissioner's determination that the stock in question did in fact become worthless in some year prior to 1941. Second, the stock having become worthless in some prior year, the petitioner cannot secure the allowance of a loss in 1941 by a purported sale which amounts only to a gesture. The stipulation of facts shows that petitioner paid out in 1941 $52 to effect a sale of 400 of his shares for *352 $5.00. It is clear that such a purported sale amounts only to a gesture and cannot be given recognition to establish a tax loss. The Tax Court had before it very recently a similar question in the case of Franklin R. Chesley, Docket No. 7296 [5 TCM 995]. The case was decided against the taxpayer in a memorandum opinion entered November 27, 1946. In that case we held that: Taxpayer is not entitled to a loss deduction in 1941 on account of the sale for $5.00 of stock of the Petroleum Rights Corporation which had been acquired in 1936 for $20,000, since the stock had become worthless in an earlier year when the corporation entered into an agreement with its largest creditor by which its assets were transferred to its creditors. The execution of the agreement was an act of insolvency fixing the time of worthlessness. Taking of the loss may not be postponed to a later year by the device of a sale. On the strength of the authorities above cited, we sustain the determination of the Commissioner. Decision will be entered for the respondent.